**Harold CLOUD, Appellant,**

**v.**

**Carl HUG et al., Appellees.**

Court of Appeals of Kentucky.

June 24, 1955.

Rehearing Denied Sept. 30, 1955.

912

D. D. Schroader, N. C. Duncan, Fred M. Goldberg, Louisville, for appellant.

Robert E. Hogan, Louisville, for appellees.

MILLIKEN, Judge.

This appeal presents a question in the field of Conflict of Laws of Bills and Notes and Contracts, and consequential questions about whether any of the provisions of the governing law are obnoxious to the public policy of this state.

The appellant, Harold Cloud, a resident of Indianapolis, Indiana, is the payee of a negotiable promissory note for $5,867.84, the unpaid balance of which became payable when the appellees, Carl and Estelle Hug, husband and wife, makers of the note, failed to keep up their weekly payments. The note was dated at Indianapolis on December 28, 1949, was made payable at the Indianapolis home of the payee, bore interest at 6% after maturity, and contained a provision for an additional 10% in the event it became necessary to employ a lawyer to collect the balance due on it.

The judgment appealed from provides that the appellant, Harold Cloud, recover of the appellee, Carl Hug, $4,867.84, with interest, but absolved the appellee Estelle Hug from liability on the ground that she signed her husband's note as surety without setting aside any of her property by mortgage or other conveyance as was required by KRS 404.010 before its amendment in 1954. The judgment was based on the theory that Kentucky law governed the transaction, and, consequently, the wife was not liable and the 10% penalty provision not valid.

Carl Hug originally became indebted to Harold Cloud on an open account for the purchase of merchandise. When the account was not paid Cloud filed suit in Louisville, where Mr. and Mrs. Hug resided, and attached Hug's 1946 DeSoto and his undivided interest in Louisvile real estate held by Hug and his wife with the right to the entirety by survivorship. In an effort to obtain a release of the attachment Hug went to Indianapolis to discuss the matter with Cloud, and the latter agreed to release the attachment if Hug and his wife would

execute the promissory note later sued upon in this action. Hug readily assented, signed the note in the office of Cloud's Indianapolis lawyer, and took the note back to Louisville with him for the purpose of obtaining the signature of his wife. Mrs. Hug admitted that Cloud's Indianapolis lawyer talked to her over the telephone at the time her husband telephoned her from Indianapolis to ascertain whether she would sign the note in order to obtain a release of the attachments, and that she agreed that she would. After she signed the note in Louisville when it was presented to her by her husband, he took it to the Louisville lawyer who had represented Cloud in the attachment proceedings and left it there for delivery to Cloud in Indianapolis. Several days later the attachments were released.

■ It seems clear to us, as we shall show in detail later, that the parties intended the law of Indiana to govern their transaction. There is no provision in Indiana law requiring the wife to set aside property when she signs a note as surety for her husband as is required by our KRS 404.010, in effect at the time of this transaction. Furthermore, the 10% penalty for attorneys' fees is legal in Indiana, Easley v. Deer, 69 Ind.App. 264, 121 N.E. 542, but not valid in Kentucky, C. I. T. Corp. v. Studebaker Sales of Kentucky, 251 Ky. 349, 65 S.W.2d 84.

For the purpose of this opinion we assume arguendo that Mrs. Hug was a surety on her husband's note and not a co-maker or principal, for this court decided in R. S. Barbee & Co. v. Bevins, Hopkins & Co., 176 Ky. 113, 195 S.W. 154, 155, that the principles of comity require this state to enforce contracts valid where made when the question of public policy involved only affects the capacity of the parties to contract. In that case this court enforced a contract under West Virginia law and denied the exemption claimed by Mrs. Bevins because she signed the notes in Pike County, Kentucky, for it appeared that, after signing the notes, she delivered them to her husband who took them to West Virginia where they

were delivered and where they were by their terms made payable. We commented that the contract was not consummated until the notes were delivered in West Virginia where they were also payable, and concluded that the contract was both made in and to be performed in West Virginia, and that the law of that state applied. We held in that case that it was not obnoxious to the public policy of this state to enforce the West Virginia contract, saying:

"The rule might otherwise be stated that under the principles of comity a contract, valid where made, although not valid if made here, will be enforced by our courts, where the question of public policy involved affects only the capacity of the parties to contract— that is, the degree or extent of their ability to contract—but will not be enforced where the public policy involved affects the subject-matter of the contract.

"Under either of these statements of the rule, this contract should be enforced here, because the difference in the laws of the two states affects merely the extent of the ability of the parties to contract, and does not affect in any way the subject-matter of the contract. In other words, the difference in the laws of the two states affects only the question of expediency as to what extent the parties may contract, and does not affect any quality of the contract itself, which is not in any sense inherently wrong, or vicious, or immoral. However, we do not need to look to any general rule in this particular case, as it has been decided in this state in at least two cases that it is not against the public policy to enforce here a contract made and to be performed in another state by a married woman, and valid under the laws of that state, even though the contract would not be valid if made here." Citing Young's Trustee v. Bullen, Ky., 43 S.W. 687; Gibson v. Sublett, 82 Ky. 596.

See, also, 17 C.J.S., Contracts, § 16(e), and Twentieth Street Bank v. Diehl, 260 Ky. 359, 85 S.W.2d 865.

914

On the other hand, we have refused to enforce such penalty provisions under the laws of other states on the ground that such provisions are obnoxious and against the public policy of this state both before and after the enactment of our Negotiable Instruments Law. C. I. T. Corp. v. Studebaker Sales of Kentucky, 251 Ky. 349, 65 S.W.2d 84; Miller Bros. Co. v. Blackburn Coal Co., 212 Ky. 447, 279 S.W. 618.

In concluding that the Indiana law was intended to govern, we point to the fact that the note originated in Indianapolis, was signed by Hug there, was made payable there, and was delivered to Cloud's Louisville lawyer for transmission to Cloud in Indianapolis. As between Cloud, the payee, and the Hugs as payors of the note, the note was not effective until its acceptance by Cloud in Indianapolis when he gave value for it by ordering the attachments released. In Section 320 of the Restatement of the Conflict of Laws, it is said:

"When a bill of exchange or promissory note is drawn, made or indorsed for the accommodation of the person to whom it is given by the accommodating party, the place of contracting is where it is first delivered for value to a third person.

"Comment: a. Since value is necessary to the validity of commercial paper, no contract is made until value is given; and in the case of accommodation paper this occurs only when the instrument is delivered for value to some third person."

In a sense Mrs. Hug's suretyship was inchoate until it was given vitality by Cloud in Indianapolis initiating or authorizing the release of the attachment. The manner of delivery of the note is not controlling. Furthermore, as we said in Twentieth Street Bank v. Diehl, 260 Ky. 359, 85 S.W.2d 865, 866—a case strikingly analogous to the one at bar—we have discussed delivery, but we do not "lose sight of the fact that under the general rule, and in the absence of indicia of a contrary intention, the law of the place of performance of a contract should measure the rights of the parties to it." And this is true except where a provision of the contract is obnoxious to the public policy of the forum.

The judgment is affirmed as to Mr. Hug, reversed as to Mrs. Hug, and affirmed as to the refusal to enforce the 10% provision for attorneys' fees.