**MAMMOTH CAVE PRODUCTION CREDIT ASSOCIATION,**
Appellant,

v.

**L. D. GERALDS and his wife, Shirley Geralds, Appellees.**

Court of Appeals of Kentucky.

March 4, 1977.

Discretionary Review Denied June 8, 1977.

**6**

H. Jefferson Herbert, Jr., Wilson, Herbert, Garmon & Sparks, Glasgow, for appellant.

Frederick S. Meessen, Louisville, for the Federal Land Bank of Louisville, amicus curiae.

Clay Hundley, Jr., Tompkinsville, for appellee.

Before HOGGE, LESTER and WHITE, JJ.

LESTER, Judge.

On May 21, 1975 appellant, Mammoth Cave Production Credit Association filed its complaint against appellees L. D. Geralds, his wife Shirley Geralds and the Farmers Home Administration in order to obtain collection of two promissory notes made by the Geralds with Mammoth Cave PCA and secured by a real estate mortgage on property in Monroe County on one parcel of which the FHA held a prior unsatisfied mortgage. Mammoth Cave had inserted a clause in the notes and the mortgage that upon default the borrower agreed to pay expenses of collection and reasonable attorney fees. The Geraldses failed to appear and on September 24, 1975 the court entered judgment against them for the amount owed FHA and Mammoth Cave PCA including attorney fees for Mammoth Cave PCA to be allowed after the sale of the property. The judicial sale on October 18, 1975 produced proceeds sufficient to pay FHA, Mammoth Cave PCA and attorney fees of Mammoth Cave PCA. Eleven days after the sale appellees entered their first appearance and moved that attorney fees be denied. On January 28, 1976 after consideration of the arguments of counsel the court entered an order which denied appellant attorney fees on the ground that the provision in the promissory note and mortgage calling for payment of attorney fees violated public policy. Mammoth Cave PCA appeals and the Federal Land Bank of Louisville files an amicus curiae brief in support of Mammoth Cave PCA's position. We affirm.

Appellant concedes that the case law in Kentucky has uniformly held unenforceable as against public policy a provision in a promissory note and/or real estate mortgage that the debtor pay the attorney fee arising as a result of the debtor's default, *Cloud v. Hug,* Ky., 281 S.W.2d 911 (1955), *Miller Bros. Co. v. Blackburn Coal Co.,* 212 Ky. 447, 279 S.W. 618 (1926), *Witherspoon v. Musselman,* 77 Ky. (14 Bush) 214, 29 Am.

Rep. 404 (1878), but it urges us to reverse the trial court's ruling in accordance with these decisions on the ground that either the public policy has been changed by the legislature or it should be changed by this Court.

▮ Appellant cites K.R.S. 355.3–106, 355.9–504(1)(a) and 287.215 as impliedly approving the attorney fee provision before us now, but nothing in the language of those statutes would compel such a far reaching result. K.R.S. 355.3–106 refers only to the requirements an instrument must meet in order to contain a sum certain for negotiability purposes. The Court in *C. I. T. Corporation v. Studebaker Sales of Kentucky*, 251 Ky. 349, 356, 65 S.W.2d 84, 87 (1933) responded to the argument that the comparable section on certainty 3720 b-2 of the *Negotiable Instruments Act* validated stipulations for attorney's fees in notes by stating,

> (i)t will be perceived that no attempt is made in that language . . . to enact or prescribe that a stipulation for attorney's fees could legally be made; but only that if one was contained in the note it would not render the sum agreed to be paid uncertain so as to destroy the negotiability of the instrument.

But appellant takes the position that because the language in K.R.S. 355.3–106 now reads "attorney's fee not exceeding fifteen per cent (15%) of the amount owing or five hundred dollars ($500), whichever is smaller" instead of just "attorney fees" as in 3720 b-2 that the legislature wished a different outcome in relation to attorney fee provisions. We are not willing to place a meaning on this limitation other than the obvious one that an attorney's fee higher than the restriction would make the instrument indefinite enough so as not to consist of a sum certain. K.R.S. 355.9–504 deals with a secured party's right to dispose of collateral after default and does allow for the application of the proceeds from the sale of the collateral to "the reasonable expenses of retaking, holding, preparing for sale, selling and the like and, to the extent provided for in the agreement and not pro-

hibited by law, the reasonable attorneys' fees and legal expenses incurred by the secured party . . . ." K.R.S. 355.9–504(1)(a). However, this section only applies to personalty used as collateral not real property as in this case and we decline to decide what the phrase "not prohibited by law" would mean in light of the case law, in the abstract. Appellant directs our attention to K.R.S. 287.215(3) as his strongest source of legislative policy. K.R.S. 287.-215 sets out in detail the circumstances and conditions under which a bank or trust company can collect in advance the charge on an installment loan. Section (3) of this statute permits a small delinquency charge on each installment more than ten days in arrears, and "attorney's fees not exceeding fifteen percent (15%) of the unpaid balance." Our reading of the statute as a whole conveys to us that the legislature in narrowly drafting it meant to confine its scope to a particular type of loan. Appellant's reliance on the equal protection clause of the United States Constitution has no merit since it does not really suggest that a bank or trust company would be able to do what appellant wants to do. The short answer to appellant's claim of legislative sanction is that the General Assembly has had before it the long line of Kentucky decisions holding provisions of the type in question invalid and if it wished to vary this well settled rule it would have donè so specifically not obliquely.

In addition appellant calls on this Court to overturn the controlling case law and establish a new approach consistent with appellant's impression of modern economic thought. In the absence of specific legislative direction we must refuse appellant's request. The Supreme Court of the United States in *Alyeska Pipeline Service v. Wilderness Society*, 421 U.S. 240, 247, 95 S.Ct. 1612, 1616, 44 L.Ed.2d 141 (1975) considered a related problem and came to a similar conclusion when it stated that,

> (i)n the United States, the prevailing litigant is ordinarily not entitled to collect a reasonable attorneys' fee from the loser. We are asked to fashion a far reaching exception to this "American rule"; but

having considered its origin and development, we are convinced that it would be inappropriate for the Judiciary, without legislative guidance, to reallocate the burdens of litigation in the manner and to the extent urged by respondents . . . .

Justice Lukowsky cited the above principle contained in *Alyeska, supra,* with approval in *Shepherd v. Johnson,* Ky., 535 S.W.2d 238, 240 (1976). Policies so firmly entrenched as the one before us will not and cannot be pushed aside by this Court.

All concur.