Jones, J.
 

 The evidence presented by the record to the Court of Appeals and to this court is very brief. Besides the exhibits and photographs depicting the scene of the accident, the evidence consists only of the testimony of Karr, the owner and driver of the tractor, and of Tidd, the plaintiff in the action. Both were farmers living not far from the crossing and well acquainted with it.
 

 
 *533
 
 Karr was the owner of a Ford tractor, equipped with a single seat for driving. His house was approximately twenty-four rods from the railway crossing, but his farm lay on both sides of the crossing. On the morning of September 28, 1934, he drove his tractor approximately four rods down his private driveway into the public highway, where he picked up the plaintiff and turned right and to the north and thence drove approximately twenty rods to the railway crossing where the collision occurred. The tractor was equipped with a small, “V”-shaped step measuring about ten or twelve inches at its base, culminating in a point, and used to enable the driver td mount to his seat. The plaintiff had gone to Karr’s farm for the purpose of purchasing seed whéat. Upon his starting for home, Karr asked the plaintiff to ride with him on the tractor. The plaintiff acquiesced and stepped on the narrow, “V’’-shaped step, clinging to his position by bending of his body forward and placing his left hand upon the fender of the tractor and his right upon the left shoulder of the driver. Karr had previously hitched to the rear of his tractor two plows which he intended to use on a field beyond the crossing. The railroad and highway, running approximately north and south, were nearly parallel to one another until they converged at the crossing at an acute angle. In order to see a train approaching from the south, a traveller travelling north on the highway and nearing the crossing had to look backward and to his left. Both witnesses gave testimony tending to prove that the bell and whistle were not sounded according to the statute. It developed from Karr’s testimony that there was a cut in the railroad line approximately 1500 or 2000 feet south of the crossing, beyond which point a train could not he seen. He also testified that his tractor was travelling approximately two miles an hour. The hearing of the driver was par
 
 *534
 
 tially impaired. Plaintiff testified that the tractor made
 
 “a
 
 little noise” in travelling on the cement road.
 

 In this situation, principally outlined by Karr, we shall allude to the testimony of the plaintiff himself, relating to the manner in which the accident occurred and describing his own conduct in connection therewith. After reciting that he stood on the left or west side of the tractor going north, with one hand on the fender and the other on Karr’s shoulder, plaintiff gave the following testimony:
 

 “Q. And how large was this step you were standing on? A. Not a very large step, just a step to step up on there, maybe a dozen inches wide- one end, and runs to a point the other.
 

 “Q. I see; and then you stood on that step; were you standing up straight, or bending over? A. No, I was leaned over, had to in order to hold on to the fender, where he set, to hold on I had to lean over.”
 

 The plaintiff was then asked whether he had looked for a train between the point where he got upon the tractor step and the railway crossing. His answer was: “No, I did not, for I was in bent over position, so that my eyes was looking ahead, and I couldn’t get around to look that way; had to hold oh.
 

 “Q. That is, you were in position where you could-n’t look? A. I couldn’t look, no.”
 

 The plaintiff was then asked whether an attempt to look backward in the direction the train was approaching would affect his balance on the car. His answer was: “Yes, if I let loose. * * * If I let loose, would probably fall on the plow.” In repeating his answer, he said: “If I let loose, would• probably fall on the plows, with the tractor jerking along, so held on.”
 

 In its treatment of the case, the majority of the Court of Appeals alluded to the plaintiff as occupying the status of “a passenger or guest riding on the tractor at the time by and through the invitation of Karr,
 
 *535
 
 the owner and driver of the tractor.” As one of the members of this court, I cannot conceive of one occupying the insecure foothold that the plaintiff occupied ou the tractor step, who was compelled to keep his body bent over with his hands clutching the fender and the shoulder of the driver for fear of falling on the plows, as being either a passenger or a guest. He was an invitee, certainly; but under the definition given to “agricultural tractors” by our motor vehicle code (Section 6290, General Code), they are neither equipped nor “designed or used” for carrying guests or passengers. But, assuming that Tidd could be considered as being either a guest or passenger, he was not absolved from using that degree of care which men of ordinary prudence would have exercised under similar circumstances.
 

 In
 
 Hocking Valley Ry. Co.
 
 v.
 
 Wykle, Jr.,
 
 122 Ohio St., 391, 171 N. E., 860, this court declared that one riding as a guest in an automobile “is required to exercise that care for his own safety which persons of ordinary care and prudence are accustomed to exercise under the same or similar circumstances, and that test should be applied in an action wherein he seeks to recover damages for injuries sustained in a collision of such automobile and a railroad train at a grade crossing.”
 

 In the economy of life, we were endowed with the senses of sight and hearing for our use and protection; and when the plaintiff testified that he voluntarily and deliberately placed himself in such a precarious position on the tractor step and confessed his failure to use his sense of sight in approaching a dangerous crossing with which he was familiar, he was clearly guilty of negligence directly contributing to his injury.
 

 If we accept plaintiff’s evidence that the cut through which the train approached was 1500 to 2000 feet dis
 
 *536
 
 tant from the crossing, and that the tractor was proceeding at approximately two miles an hour, there was ample time for the plaintiff to observe the approaching train between the point where he stepped on the tractor, about twenty rods south of the crossing, and the point where the collision occurred; and at the rate the tractor was proceeding, there was ample time for him to step down from the tractor into the highway and he might thus have avoided injury.
 

 In the course of his opinion, the dissenting appellate judge stated: “From the evidence it is'clear that the tractor ran into the train and not the train into the tractor,” and the jury may have found such to be the case. The testimony of the two witnesses, and especially that -of the plaintiff, seems to corroborate that opinion. Karr said that after the collision he was not thrown from his tractor but was still sitting on his seat, and Tidd testified as follows:
 

 “Q. And what broke your arm? A. Well, I touched the train, and tried to defend myself from going into the side of the train, as the train went on through, pretty fast, and as I went down, I turned this way, to the train, and I felt the train caught me, the back coach, I thought it was, caught me,” etc.
 

 Since the only testimony presented in this record is that given by Karr and by the plaintiff himself, we have not considered the charge of the trial court, which the Court of Appeals found to be erroneous; for it is impossible to perceive how any charge could be prejudicial to the plaintiff since his own testimony furnishes conclusive proof that lack of due care on his part directly contributed to his injuries.
 

 For the reasons stated, the judgment of the Court of Appeals will be reversed and that of the Common Pleas Court affirmed.
 

 Judgment reversed.
 

 Weygandt, C. J., Matthias, Day and Zimmerman, JJ., concur.