## WASHINGTON NAT. INS. CO. v. BURKE.

Court of Appeals of Kentucky.
May 29, 1953.

Stanley M. Saunier, Jr., Lexington, for appellant.

Moloney, Moloney & Hurst, Donald P. Moloney and F. Selvy Hurst, Lexington, for appellee.

STANLEY, Commissioner.

The question is whether a farm tractor is an automobile within the terms of an insurance policy.

The appellant, Washington National Insurance Company, issued a group accident policy to the members of the Blue Grass

Automobile Club of Lexington, one of whom was Louis J. Burke, Jr. It insured him against death resulting from several causes under stated conditions. The pertinent provision is:

"Part 3—Automobile, Truck, Pedestrian, Airplane, Burning Building and miscellaneous actions.

"If such injury shall be sustained:

"(a) By the wrecking of any automobile, or automobile truck or of any animal drawn vehicle in which the Insured is riding as driver or passenger."

The machine, a Case tractor, has two 38 inch main wheels with 10 inch pneumatic tires and two small pilot wheels in front, set close together, and a single seat for the driver. At the time of the accident the insured was driving the tractor unattached to any vehicle or implement. He had driven it on a side road about one-third of a mile to the highway, thence had gone about 300 feet when the tractor was struck from behind by a motor truck and wrecked. The insured was instantly killed. Upon the pleadings and a stipulation, judgment was rendered for $2,000 in favor of the beneficiary.

Much may be said in support of the view that such machine under the present circumstances is an automobile within the contract coverage. The certificate of insurance issued to Burke is styled, "Specified Coverage Travel Accident Certificate." The insured was advised: "This certificate is particularly designed to cover travel accidents and does so in almost any type of conveyance you may use for your transportation, whether riding in an automobile, truck, railroad train, steamboat, taxicab, bus, streetcar or commercial airplane. This certificate goes further and provides protection if you are run over by an automobile or other vehicle on the streets or public highways." The tractor was, in fact, being used by the insured as a means of transportation on a highway. It is not shown that it was merely being taken from one place to another for agricultural use. However, the insurance was not confined to travel and highway accidents. The policy also expressly embraced death or injury sustained in the burning of any of several classes of public buildings or the wrecking of an elevator or collapse of a building or being struck by lightning or injured in a cyclone or tornado or by drowning at a public bathing beach.

Insurance coverage is often a question of implication as a matter of legal construction; that is, the law must read into the contract as best it can the intention of the parties. It is so here. The rule, as familiar as it is well founded, that an insurance contract will be strictly construed against the insurer is of almost universal application. But such a contract, like any other voluntary agreement, derives its force and efficacy from the intention of both parties. The provisions are to be read in context and according to the natural and probable import of the language used, or as persons with usual and ordinary understanding would construe them. Fidelity & Casualty Co. v. Hart, 142 Ky. 25, 133 S.W. 996. "An insurance policy must be interpreted according to its true character and purpose, and in the sense in which the insured had reason to suppose it was understood." Continental Casualty Co. v. Linn, 226 Ky. 328, 10 S.W.2d 1079, 1082; Cheek v. Commonwealth Life Insurance Co., 277 Ky. 677, 126 S.W.2d 1084.

This policy was issued to the members of an automobile club as a group. It is well known that an automobile club is an association of motorists having for its principal objects their mutual benefit as operators of passenger automobiles and the promotion of good roads for the use of all motorists. We cannot escape the view that the insured supposed his insurance coverage related specially to loss sustained in operating the character of an automobile with which his club was concerned. And the small premium—only $1.30 a year —was certainly an indication to him that he had limited coverage. With all the liberalty of construction in favor of the insured, in the quest for the intention of the parties, regard must necessarily be had for the fact that a small premium was payable. Inter-Southern Life Ins. Co. v. Foster, 248 Ky. 481, 59 S.W.2d 668; Ransdell v. North

American Accident Ins. Co., 275 Ky. 507, 122 S.W.2d 114; Colyer v. North American Accident Ins. Co., 132 Misc. 701, 230 N.Y.S. 473.

■ As a generic word, "automobile" is broad enough to include all forms of self-propelling vehicles. However, the word is to be defined in a particular case from its association in the context (noscitur a sociis) and by considering the object or purpose of the instrument in which it is used. Life & Casualty Ins. Co. of Tenn. v. Metcalf, 240 Ky. 628, 42 S.W.2d 909. In that case it is said it should be presumed that "automobile" is used in an insurance policy in its common, general and popular sense. Modern usage assigns to the word automobile the restricted meaning of a motor-driven vehicle suitable and intended for conveyance of persons. Berry, Law of Automobiles, Sec. 2.02; Blashfield, Cyclopedia of Automobile Law and Practice, Secs. 2 and 4122. We held in the Metcalf case that a milk truck was included in the phrase "private motor driven vehicle." But in Monroe's Adm'r v. Federal Union Life Ins. Co., 251 Ky. 570, 65 S.W.2d 680, we held that an airplane accident was not covered by a policy insuring one against death caused by the wrecking of an automobile or motor driven car. Regard was had for the fact that an airplane is a vehicle in a class by itself and, like a motorcycle, is not generally regarded as a "car" or "automobile" although it is motor-driven. See Notes, 48 A.L.R. 1086; 70 A.L.R. 1253; 138 A.L.R. 420.

The manner in which a vehicle is used as well as its construction determines its character. A farm tractor is a machine designed and intended to be used as an agricultural implement. It is not intended or ordinarily used as a means of transportation on the highways although on occasion it may be temporarily operated on them. As described in Tidd v. New York Central R. R. Co., 132 Ohio 531, 9 N.E.2d 509, (relating to the question of contributory negligence of a person riding on the step of a farm tractor): "An agricultural tractor is neither equipped, designed, nor used for carrying guests or passengers".

And in Davis v. Wright, 194 Okl. 451, 152 P.2d 921, 922, a farm tractor was held to be "an implement of husbandry", and not a motor vehicle, and was, therefore, within statutory exemptions from debt.

The difference has been clearly recognized by the General Assembly of Kentucky. The statute licensing motor vehicles and operators expressly excepts farm tractors along with other certain machines that are not practical for the transportation of persons or property on the highways. KRS 186.010. It provides that "No person need obtain an operator's license to operate * * * any tractor or implement of husbandry temporarily drawn or propelled on the highways." KRS 186.420. And the statute relating to defacing or altering automobile serial numbers notes that distinction by referring to "a motor vehicle or farm tractor." KRS 433.640. Taxes on gasoline used in the operation or propulsion of "tractors for agricultural purposes" may be refunded to the extent of 90 per cent of the amount paid. KRS 138.344.

If the present policy included the machine which was involved in this accident, it would likewise have included every other character of self-propelling vehicle, such as a threshing machine, a road roller or a heavy caterpillar scraper or power shovel. The terms of the policy indicate there was no intention to include a farm tractor or any such machinery within the clause "automobile or automobile truck." Since a motor truck clearly is an automobile in common parlance, using both terms must have been to signify "automobile" meant a passenger car as distinguished from a truck or other gasoline driven vehicle." "Farm tractor" is no synonym of "automobile."

■ In Koser v. American Casualty Co. of Reading, 162 Pa.Super. 63, 56 A.2d 301, 302, the policy covered death caused "while the Insured is Operating, Driving, Riding in, Adjusting or Cranking an Automobile." Under the heading "Additional Provisions," it was stated, inter alia, that the term "automobile" as used in the policy did not include a motorcycle or airplane. The court regarded the specific exclusion provision as

enlarging the meaning of "automobile" from its ordinary and popular sense to its generic sense, applying the maxim expressio unius est exclusio alterius. The Tennessee Supreme Court, following the reasoning of the Koser case, held that a pick-up truck was a "private passenger automobile of the pleasure car type." Aetna Life Insurance Co. v. Bidwell, 192 Tenn. 627, 241 S.W.2d 595, 596. Citing these cases, the appellee points to Section 6 of the policy at the bar headed "Definitions, Exceptions and General Provisions." It is therein stated, "This certificate does not cover injury sustained while" the insured is, inter alia, "riding a motorcycle or a bicycle" or riding or driving in a race or operating a submarine or driving a police or emergency automobile or fire apparatus; or while under the influence of intoxicants, etc. The language of this exclusion section of the policy is not definitive or "sustained by" as in the coverage clause, but is "while riding" etc. "While" is a word of time or circumstance and not of causation such as the wrecking of an automobile. The Koser and Bidwell cases are close to our Metcalf case, Life & Casualty Insurance Co. of Tenn. v. Metcalf, 240 Ky. 628, 42 S.W.2d 909. The case at bar is closer to our Monroe case, Monroe's Adm'r v. Federal Union Life Ins. Co., 251 Ky. 570, 65 S.W.2d 680, holding an airplane is a distinct class of vehicle and is not to be regarded as a motor-driven car. As we have already noted, the covenant of coverage in the policy at bar was to indemnify for injuries or death sustained "by the wrecking of any automobile or automobile truck." Applying the two Latin guides to interpretation, we think, as above indicated, the word "automobile" was narrowed rather than enlarged.

Closer in point is Bowers v. Continental Life Ins. Co., Cal.App., 300 P. 97, affirmed, 214 Cal. 166, 5 P.2d 608, in which it was held that the death of the insured, resulting from the tipping over of a Fordson tractor which he was driving, was not covered by a provision in a policy for indemnity in case of injury or death caused "By the wrecking or disablement of any private automobile, motor driven car or horse-drawn vehicle, in which the insured is riding or driving, or by being accidentally thrown from such wrecked or disabled automobile, car or vehicle", where it appeared from the evidence that the tractor was not equipped to carry passengers, that it had only room for a driver or operator who sat astride on a saddle between the rear wheels, that it was not equipped with a body which would make it suitable for carrying any loads on itself, but was equipped with a drawbar to pull vehicles, and that the operator rode upon the tractor and not in it. Note 138 A.L.R. 421.

The question in Jernigan v. Hanover Fire Ins. Co., 235 N.C. 334, 69 S.E.2d 847, was whether a farm tractor was included in a fire insurance policy covering "automobiles owned by the insured and held for sale or used in repair service". The court reasoned that since there was nothing in the policy indicating that the parties intended the word "automobile" to have a different meaning, it was to be taken and understood in its ordinary and popular sense. Said the court: "Although it is a motor vehicle, a farm tractor can not properly be classified as an automobile in either the general or the particular sense. This is so for the very simple reason that it is neither designed nor suitable for use on highways and streets for the transportation of either persons or property." The court pointed out the difference between the policy and that involved in Koser v. American Casualty Co., supra, 162 Pa.Super. 63, 56 A.2d 301, where the language employed to express the contract ignored the ordinary and popular meaning of the word "automobile" and made that word a general term to cover all motor vehicles except those specifically excluded.

Upon a full consideration of the terms of the contract, the class of persons to whom the group policy was issued and the common acceptation and applicable legal interpretation of the word "automobile," we conclude that the injury resulting in the death of the insured, Burke, was not sustained by the "wrecking of any automobile."

Wherefore, the judgment is reversed.