**Willie ISAAC et al., Appellants,**

**v.**

**Claude ALLEN et al., Co-Administrators, etc., Appellees.**

Court of Appeals of Kentucky.

May 31, 1968.

Earl R. Cooper, Salyersville, for appellants.

Cordell H. Martin, Hindman, Joe P. Tackett, Prestonsburg, for appellees.

PALMORE, Judge.

A pickup truck in which three teen-age boys were riding ran off a country road and hit a tree. One of the boys, Buddy Jack Allen, 18 years of age, was killed. In this wrongful death action his personal representatives got a verdict and judgment for $15,000 against Lowell C. Gipson, who is alleged to have been the driver, and Willie Isaac, who is alleged to have placed Gipson in possession of the truck with instructions to go and buy a package of cigarettes for him. Gipson and Isaac appeal.

The appellants contend they were entitled to a directed verdict on two grounds, (1) that the evidence did not support a finding that Lowell Gipson was driving the truck at the time of the accident, and (2) that the decedent, Buddy Jack Allen, was contributorily negligent as a matter of law because he knew Gipson was intoxicated and had participated in drinking with him shortly before the accident.

The fatal journey began on a Sunday afternoon at the home of Claude Allen, Buddy Jack's father. Those present were Claude Allen and his wife, Vonda Gay Sizemore, Willie Isaac, Lowell Gipson, Darwin Gipson, and Buddy Jack Allen. According to the Allens and Vonda Gay, Willie wanted some cigarettes and Lowell offered to go and get them, whereupon Willie handed Lowell the keys to a pickup truck which belonged to Willie's father and had been loaned to Willie on the previous day for the purpose of providing transportation to his place of work as a night watchman. Buddy Jack and Darwin Gipson accompanied Lowell Gipson on the mission. The Allens and Vonda Gay testified that there was no drinking, that everyone was sober, and that when the three boys left Lowell was driving.

The evidence is not clear as to how long thereafter the accident happened (Claude Allen said he learned of it within an hour after the departure), but it appears that the boys made at least two stops in the interim. One was at the home of Hub Preston, whose son, Dick Preston, says they got out of the truck, walked up in the yard and sat down, each with a can of beer in hand. They stayed only two or three minutes, because he told them "to take their beer on up the road." When they departed Lowell was driving. Preston heard the sound of the crash some three to five minutes later. It happened within a quarter of a mile of the Preston home.

Preston testified that none of the boys appeared to be drunk, that they did not stagger and "talked good." Darwin was the only one of the three he saw take a drink. He did not notice whether either of the beer cans in the possession of Lowell and Buddy Jack had been opened.

There were no eyewitnesses to the accident except for the three occupants of the truck. Buddy Jack's head went through the windshield and he was nearly decapitated by the broken glass. Photographs of the windshield taken shortly afterward show one hole, which from the standpoint of a person sitting in the cab of the truck is located just to the right of the center, and a large shattered spot, but not broken through, above the steering wheel. It is reasonable to infer that the hole was made by Buddy Jack's head and that this is the manner in which his throat was severed. It is reasonable also to conclude that the damage to the windshield above the steering wheel was made by the driver's head.

Claude Allen testified that he talked with Lowell Gipson shortly after the accident and that Lowell then said it was he, Lowell, who had been driving. At the trial Lowell said that Buddy Jack was driving when they left the Allen place, but he professed not to remember much about what happened thereafter and said he did not

know who was driving at the time of the accident.

Darwin Gipson testified that after leaving the Hub Preston place they stopped, got out of the car and drank beer in the road, during which time one Gene Coburn passed by and saw them. This testimony conflicts to some extent with that of Dick Preston, who said he heard the sound of the collision within three to five minutes after the truck left his home, but it is corroborated by the testimony of Coburn. Coburn said that he was driving an automobile and came upon the three boys standing in the road. It was necessary that the truck be moved out of the way in order for Coburn to get his vehicle past it, so Lowell Gipson drove the truck off to the side and then got back out. Coburn left, but heard the sound of the wreck and returned. The truck had gone off the road and come to rest against a tree a short distance from the place at which Coburn had seen it. Darwin either had got out or was in the process of extricating himself from the cab of the truck, and Lowell was lying face down on the seat with Buddy Jack's body on top of him. Buddy Jack's feet were "a little off center of the middle of the truck towards the driver's side and he was laying plumb back in the far corner," on top of Lowell.

Darwin Gipson testified that after Coburn departed he and his companions got back in the truck, with Buddy Jack at the wheel, Darwin in the middle and Lowell on the right-hand side. They drove about 200 yards and the truck went off the right side of the road down a slope or embankment, so that when it came to rest it was leaning to the right (that is, a starboard list). Darwin says he was on top of Lowell but under Buddy Jack, and that he had to push Buddy Jack off him in order to get out of the truck. Darwin suffered a bruised head but no cuts. Lowell received a cut over the left eye.

■ The appellants contend that the physical facts with respect to the relative positions of the boys in the cab of the truck immediately after the accident corroborate Darwin Gipson's eyewitness testimony that Buddy Jack Allen was the driver. Again, however, Darwin Gipson is the key witness, because he had moved, and in so moving had changed the position of at least one of the other two boys, before the witness Coburn reached the scene. So if the jurors were at liberty to disbelieve Darwin Gipson's testimony that Buddy Jack was the driver, they were equally free to disbelieve his account of the positions occupied by himself and the other boys right after the collision and before Coburn arrived. Other competent evidence indicated a likelihood that Lowell Gipson was the driver, and the hole and other marks in the windshield strongly suggest that Buddy Jack was not in the driver's seat. In fact, there is more reason to speculate that Darwin himself was driving than to believe that Buddy Jack was behind the wheel. Certainly we do not regard the physical facts proved in this case as sufficiently unequivocal and conclusive to prevent a finding that Lowell was the culprit.

■ We come now to the question of whether Buddy Jack Allen, by reason of the drinking mentioned by several of the witnesses, was contributorily negligent as a matter of law. On this issue the defendants, of course, had the burden of proof, and the jurors were given the opportunity, by an instruction to that effect, of finding for the defendants if they believed Lowell Gipson was driving while intoxicated and Buddy Jack knew it, or in the exercise of ordinary prudence should have known it, and failed to exercise ordinary care for his own protection.

As we have indicated, the Allens and Vonda Kay Sizemore said that everyone was sober and no one was drinking or had any intoxicants at the Allen house. The undertaker who removed Buddy Jack's body from the truck and prepared it for burial did not detect any evidence of the presence of alcohol. On the other side of the coin we have mentioned the testimony

of Dick Preston that each of the three boys was carrying a can of beer just before the accident, though he did not see either Lowell or Buddy Jack take a drink. He says they "talked good," were steady on their feet, and, in fine, exhibited no evidence of intoxication. When Gene Coburn found them standing in the road a few moments later he says they had one can of beer among them, and that "they weren't what you may say drunk, but they were drinking heavy. They couldn't walk like a sober man could."

The most positive evidence of· drinking and drunkenness was given by the appellant Lowell Gipson and his cousin, Darwin Gipson. Lowell says he joined up with Willie Isaac at around 9:00 o'clock in the morning, and that during the day they drank whiskey, beer and wine. Lowell (then 16 years old) got "pretty drunk" and was "still drinking" when they went to the Claude Allen home that afternoon. Meanwhile Darwin Gipson had joined them. Darwin had $10, and while at the Allen place they decided to go out for more liquor. Willie told them not to take the truck, but they went anyway, accompanied by Buddy Jack. Before leaving, all three drank some wine at the truck, which was parked across the road from the Allen house. That is about all that Lowell remembered, except that Claude Allen also was drinking at the house (which the Allens denied).

Darwin Gipson (then 15 years old) joined Willie Isaac and Lowell Gipson while they were on their way to the Allen place. They gave him some wine and then stopped at the Allen home for some water to "chase" it (this was denied on rebuttal). Willie, Lowell, Darwin, and Buddy Jack all took a drink at the truck. Lowell, Darwin and Buddy left in Willie's truck, Darwin being then "pretty well intoxicated—not drunk." They bought more wine with the $10 mentioned in Lowell's testimony, drank a can of beer each at the Hub Preston place, got out of the truck, relieved themselves and drank more beer at the place a

short distance from the Preston home where they were seen by Gene Coburn, and then proceeded to the place at which the truck ran off the road.

Willie Isaac was called for cross-examination by the plaintiffs, but neither side asked him any questions about the drinking. No witness undertook to describe the manner in which the truck was being driven either before or at the time of the accident, why it went off the road, or at what speed it was being operated.

■ The extreme difficulty of determining whether the question of contributory negligence in a case of this kind should be left to or taken from the jury was discussed at some· length in the recent case of Biddle v. Biddle, Ky., 414 S.W.2d 136 (1967), and, as indicated by the dissenting opinions in that case and in Jeffery v. Ray, Ky., 406 S.W.2d 838 (1966), the members of the court often find themselves in disagreement. The rule followed by the majority seems to be that the question must be left to the jury unless three things are obvious, (1) that the driver had been drinking to the extent that his ability to drive was affected, (2) that the person electing to ride with him must have known it, and (3) that a prudent person faced with the same choice under like circumstances would not have ridden with the driver. We have not accepted a hard and fast rule that if the driver has had anything to drink and the passenger has had a drink with him the passenger is negligent as a matter of law in riding with him.

In the foregoing context this is a rather close case. The jurors may have discounted or even disbelieved much of the testimony given by the Gipson boys, one of whom was a defendant and the other his cousin. They certainly were at liberty to believe the Allens and Vonda Kay Sizemore (now a daughter-in-law of the Allens) as against the Gipsons. None of them can be said to have been disinterested. As between Dick Preston, who says all three boys appeared to be sober five minutes before the acci-

dent, and Gene Coburn, who says they "couldn't walk like a sober man" less than five minutes after the time of Preston's observation, they may have chosen to rely on Preston.

A good many lies were told at this trial. The credibility of witnesses is better left to the judgment of a jury than an appellate court. It is our conclusion that the trial court did not err in refusing a directed verdict in favor of Lowell Gipson and Willie Isaac.

The judgment is affirmed.

WILLIAMS, C. J., and EDWARD P. HILL, MILLIKEN and STEINFELD, JJ., concur.

MONTGOMERY and OSBORNE, JJ., dissenting.