Glenn K. MULBERRY, Adm'r etc. et al.,
Appellants,

v.

Melrose Jones HOWARD et al., Appellees.

Court of Appeals of Kentucky.

June 12, 1970.

Rehearing Denied Oct. 9, 1970.

———◆———

John Lane Ackman, Williamstown, for appellants.

Rodney S. Bryson, Ware, Bryson, Nolan & West, Covington, Ottis Lanter, Williamstown, for appellees.

ROBERT H. HELTON, Jr., Special Commissioner.

Shortly after eight o'clock in the morning of January 5, 1967, Marshall K. Mulberry, age 19, was killed in a collision between an automobile he was driving and an automobile owned by J. W. Howard and driven by his wife, Melrose Jones Howard. Mrs. Howard sustained a severe head injury resulting in her complete loss of memory of the accident and the circumstances of how it occurred. Both vehicles were extensively damaged. No other witness actually saw the vehicles collide, although one witness observed the Mulberry car seconds before the collision and the same witness saw them move apart an instant after the impact.

In this wrongful death action by Mulberry's administrators against the Howards a jury awarded the Howards a total of $14,325.98 against the administrators on Mrs. Howard's counterclaim for personal injuries and Mr. Howard's counterclaim for damage to his automobile. The administrators appeal, contending that the trial court erred in (1) failing to direct a verdict for them on the counterclaim of the Howards, and (2) permitting the investigating police officer to state his opinion with respect to where the point of impact between the vehicles was in relation to the center line of the highway.

The accident happened on U. S. Highway 25 near the community of Mason in Grant County, at which point the highway runs generally north and south. Young Mulberry was alone and traveling south enroute to his home in Grant County from his job in Cincinnati. Mrs. Howard was alone and traveling north enroute to her job at Grant County High School. Highway 25 is a two-lane highway, the paved surface of which is 24 feet wide at the place of the accident. The highway was covered with snow and ice to a depth of approximately one inch. The snow and ice had begun to thaw in places, and the highway remained slippery and hazardous. The collision occurred near the crest of a hill and immediately after the vehicle driven by Mrs. Howard had passed through a curve bearing to her left. The Mulberry car was traveling upgrade and the Howard car downgrade at the time of the collision.

The witness, Arthur Wright, traveling north on Highway 25 met the southbound Mulberry car at the foot of the hill up which the Mulberry car traveled to the point of collision. Wright testified that after meeting and passing the Mulberry car he observed in his rear-view mirror the Mulberry car as it proceeded up the hill toward and near the place of collision. Wright, testifying for appellants, observed the rear end of the Mulberry car "duck-

tailing" and swerving or swaying back and forth as it traveled up the hill but he was unable to determine the position of the Mulberry car in relation to the center of the highway because of snow on the road. The witness did state, however, that Mulberry appeared to be trying to get his vehicle toward the right side of the highway. Upon observing the erratic movement of the Mulberry car Wright apparently realized that its driver was in peril, because he immediately stopped his own automobile, got out and when he looked back in the direction in which the Mulberry car had been traveling he saw the two vehicles "fly apart". Wright testified that he did not actually see the vehicles collide. Each vehicle came to rest on its proper side of the highway with the front of each vehicle sitting on the paved surface of the highway facing the other. The rear of the Howard car extended onto the east shoulder of the road while the rear of the Mulberry car extended onto the west shoulder. The vehicles completely blocked the highway and prevented traffic from passing. The physical evidence is that the main impact was between the left front of the Howard car and the left side of the Mulberry car.

A state trooper arrived at the accident scene within twenty or twenty-five minutes after the accident and before either car had been moved. This officer had been a state trooper for four and one-half years and for several years prior to becoming a state trooper had served as a policeman for the City of Dry Ridge. He testified that he had received forty hours of instruction and training in accident investigation while a cadet in state police school, and that he had investigated approximately 300 automobile accidents during his service as a state trooper and as a policeman for the City of Dry Ridge. The trooper also testified that the major portion of debris from the accident was concentrated in the northbound traffic lane. In the course of his investigation, the trooper also observed a skid mark clearly visible on the highway for a total length of approximately 125 feet and which had the appearance of having been made by the wheel of an automobile that had not been free to roll. The trooper testified that this mark began about seven feet east of the center line in the northbound traffic lane and continued in that lane to a point where snow had been piled up under the Howard car. From that point the mark continued from the northbound traffic lane in the form of a semi-circle into and across the southbound lane and led directly to the left rear wheel of the Mulberry car. Over appellants' objection, the trial court permitted the state trooper to state his opinion that the point of impact between the vehicles in relation to the center line of the highway was approximately eighteen inches east of the center line in the northbound lane of the highway.

In support of their contention that appellants were entitled to a directed verdict on the counterclaims of the Howards, appellants argue that the evidence failed to establish negligence on the part of their decedent as the proximate cause of the collision and resulting injuries and damage, and that the appellees had and failed to sustain the burden of proving Mrs. Howard's freedom from contributory negligence. We find no merit in either argument.

The fact that a motorist is on the wrong side of the road at the time of collision with an automobile traveling in the opposite direction constitutes prima facie proof of negligence on his part, and we have often so held. Gross v. Barrett, Ky., 350 S.W.2d 457 (1961); Myers v. Walker, Ky., 322 S.W.2d 109 (1959), and Stark's Adm'x v. Herndon's Adm'r, 292 Ky. 469, 166 S.W.2d 828 (1942). To avoid liability in that kind of situation, such driver must show that his negligence did not put him there. Myers v. Walker, supra. The concentration of debris from the accident in the northbound traffic lane, the physical damage to the vehicles themselves, and the presence of the skid marks on the highway as above described, give reasonable support to an inference that the Mulberry car was in the wrong lane of the highway at the

time of the collision. And from the physical evidence narrated above and the evidence concerning the erratic movement of the Mulberry car, the jury could logically conclude that the proximate cause of the collision was young Mulberry's failure to keep his automobile under reasonable control and allowing the same to enter the northbound lane of the highway.

We also reject appellants' argument that the appellees had and failed to sustain the burden of proving Mrs. Howard's freedom from contributory negligence because this court is committed to the rule that negligence will not be presumed, but must be established by evidence. CR 8.03, Eichstadt v. Underwood, Ky., 337 S.W.2d 684 (1960); Carpenter v. Galloway, Ky., 344 S.W.2d 795 (1961) and Isaac v. Allen, Ky., 429 S.W.2d 37 (1968). The rule is sound and we adhere to it by stating that the appellees were under no duty to establish by evidence Mrs. Howard's freedom from contributory negligence, the burden of proof on this issue being on the appellants who assumed the posture of defendants with respect to appellees' counterclaims. The evidence in this case did not establish contributory negligence on the part of Mrs. Howard beyond the province of the jury to remain unconvinced of it.

It is, therefore, our opinion that the evidence was sufficient to justify submission of the appellees' counterclaims to the jury.

We now turn our attention to appellants' contention that the trial court erred in permitting the investigating police officer to express his opinion as to the point of impact between the vehicles. After testifying concerning his training and experience in motor vehicle accident investigation and what he observed from his investigation at the accident scene, the trooper was asked the following:

"Q. From your investigation of this accident, your investigation of the scene of the accident, the position of the automobiles, the damage done to the automobiles, do you have an opinion as to where the point of impact of these two vehicles was in relation to the center line?

A. It was approximately a foot and a half east of the center line in the northbound lane."

The thrust of appellants' final contention is that the witness was allowed to usurp the function of the jury in determining whose negligence caused the collision. It will be noted, however, that the witness only expressed his opinion as to the place or point on the highway where the collision occurred, not whose negligence caused the vehicles to meet at the place or point of collision. It appears that the officer reached his stated opinion by applying his training and experience to the physical evidence which he observed at the scene within twenty or twenty-five minutes after the accident and before either vehicle had been moved or any vehicular traffic had passed through the scene. And the officer fully disclosed the facts upon which he based his opinion.

In Sellers v. Cayce Mills Supply Company, Ky., 349 S.W.2d 677 (1961), this court held that a nearly identical question was proper when asked a trained police officer who had investigated the accident there in question. In Sellers we said: "Furthermore, we believe that an answer to this question would not have usurped the function of the jury because a description of the point of impact does not conclusively fix negligence by either party and the witness would not be giving his opinion as to the negligence of either party. The jury would later assume the responsibility of deciding the negligence which caused the vehicles to meet at the point of impact." This is precisely what happened in the trial of the instant case. In Browley v. Murkison, Ky., 282 S.W.2d 352 (1955), concerning the testimony of another trained police officer in an automobile collision case, we said: "The court properly permitted him to use the descriptive phrase 'point of impact' after he had fully disclosed the facts upon which he based his statements."

We conclude, therefore, that the trial court correctly permitted the officer to state his opinion with respect to where the point of impact between the vehicles was in relation to the center line of the highway. Apart from the opinion testimony of the trooper, we are of the opinion that there was ample evidence to support the verdict and judgment.

The judgment is affirmed.

All concur.