**KENTUCKY FARM BUREAU MUTUAL INSURANCE COMPANY, Appellant,**

**v.**

**Mrs. Arlie VANOVER, As Administratrix of the Estate of Everett Vanover, et al., Appellees.**

Court of Appeals of Kentucky.

March 1, 1974.

Pat Rankin, Stanford, James R. Odell, Lexington, for appellant.

Ben K. Wilmot, Cabell D. Francis, Stanford, for appellees.

GARDNER, Commissioner.

Alice and Helen Vanover were riding on a tobacco setter attached to the back of a tractor being driven by their father, Everett Vanover, when they were struck by a car driven by Charles Collins. Alice, Everett, Collins and a passenger in Collins' car were killed. Helen was injured. Hellen and the estates of Everett and Alice were awarded $50,221.35 in damages, $42,190.19 of which were adjudged against the Kentucky Farm Bureau Mutual Insurance Company which had issued two policies with uninsured-motorist endorsements on a car and on a pick-up truck, respectively, belonging to Everett. Farm Bureau appeals. We affirm.

The Vanovers had finished setting tobacco about 9 p. m. and were traveling on U.S. 27 toward their home when the Buick being driven by Collins ran into the tractor and setter from the rear.

Farm Bureau's main argument is that the uninsured-motorist endorsements did not apply to this accident. Farm Bureau refers to identical provisions of the endorsements which read:

"EXCLUSIONS

1. This endorsement does not apply:

(1) to bodily injury to an insured while occupying an automobile, other than an insured automobile, owned by the named insured or a relative, or through being struck by such an automobile; * * *."

Farm Bureau contends that the tractor was being used as an *automobile* at the time of the accident and thus was excluded. It bases this in part on the definition of "uninsured automobile" found in the policies, which is as follows:

"The term 'Uninsured Automobile' shall not include: * * * (e) a farm type tractor or equipment designed for use principally off public roads, except while actually upon public roads."

Farm Bureau contends that the intent of the section was to include a farm tractor while traveling on a public road in the policy definition of "automobile." Farm Bureau then calls attention to another provision:

" 'Insured Automobile' includes a trailer and means: (1) an owned automobile for which a specific premium charge indicates that coverage is afforded; * * *."

Farm Bureau points out that there was no premium paid to cover the tractor nor was it mentioned in either policy and, therefore, the uninsured-motorist provisions were inapplicable to the tractor.

In short, Farm Bureau argues that there was no coverage because the tractor was

an automobile and was not one for which a premium charge was shown in the policies. It bolsters its argument by citing the policies' definition of an uninsured automobile, which it argues converts a farm tractor to an automobile "while actually upon public roads." That definition we believe is inapplicable here because it is speaking of "uninsured automobile," as for example, where the uninsured motorist is the tractor operator and the wreck occurs with the tractor and another automobile whose owner is insured under an uninsured-motorist endorsement.

In Washingtom Nat. Ins. Co. v. Burke, Ky., 258 S.W.2d 709 (1953), where a farm tractor while traveling on a highway was struck from the rear by an oncoming car, it was held that the tractor was not an "automobile" under the coverage clause of an insurance policy. In accord are Bowers v. Continental Life Ins. Co., 214 Cal. 166, 5 P.2d 608 (1931), and Jernigan v. Hanover Fire Ins. Co. of New York, 235 N.C. 334, 69 S.E.2d 847 (1952). For a general discussion see 38 A.L.R.2d 861. We have said that the meaning of "automobile" should be considered in its ordinary and popular sense rather than in its generic sense. See Washington Nat. Ins. Co. v. Burke, supra. Many other jurisdictions have adopted this view. Cf. Koser v. American Casualty Co. of Reading, 162 Pa.Super. 63, 56 A.2d 301 (1948); Aetna Life Ins. Co. of Hartford, Conn. v. Bidwell, 192 Tenn. 627, 241 S.W.2d 595 (1951). Various statutes also have distinguished farm tractors from automobiles or motor vehicles. KRS 187.290(4), included in the chapter dealing with the financial responsibility law, specifically excepts farm tractors from the definition of "motor vehicle." Likewise, farm tractors are excepted from the definition "vehicle" for licensing purposes in KRS 186.010(7), (8). Cf. KRS 433.640.

If there was a reasonable doubt as to whether the tractor was an automobile within the meaning of the policy endorsements, the almost universal rule that the doubt should be resolved in favor of the insured would suggest a determination that the tractor was not an automobile as used in the policy. 7 Blashfield Auto Law 3rd Ed., section 292.7; State Automobile Mutual Insurance Co. v. Trautwein, Ky., 414 S.W.2d 587 (1967); State Farm Mutual Automobile Ins. Co. v. Shelton, Ky., 413 S.W.2d 344.

The insuring clauses of the uninsured-motorist endorsements do not limit coverage to a vehicle listed in the policy. Very broad in their language, they recite that the company agrees "To pay all sums, except punitive damages, which the insured or his legal representative shall be legally entitled to recover as damages from the owner or operator of an uninsured automobile because of bodily injury, sickness or disease, including death resulting therefrom, hereinafter called 'bodily injury', sustained by the insured, caused by accident and arising out of the ownership, maintenance or use of such uninsured automobile; * * *."

In Meridian Mutual Insurance Company v. Siddons, Ky., 451 S.W.2d 831 (1970), a pedestrian, a child of the insured, was struck and killed by an uninsured motorist. While the issue of whether the endorsement covered a person injured not in connection with the "insured" motor vehicle was not raised, the fact that the policy did not restrict coverage of injuries to those arising in connection with the "insured vehicle" was mentioned by way of a footnote. Neither did the statute contemplate such restriction. Similarly, there was no such restriction in the policy under consideration and we are of the opinion that under the circumstances of the present case the endorsements covered the Vanovers.

Farm Bureau's well-stated argument that the Vanovers should not recover under both policies runs abruptly into the face of Meridian Mutual Insurance Company v. Siddons, supra, wherein we held that recovery may be had under two policies. Farm Bureau recognizes that Merid-

ian is contrary to Farm Bureau's stand but it insists that reason and equity direct that it should be overruled. We are not so persuaded.

 Farm Bureau assigns as error the admission into evidence of the opinion testimony of Trooper Brown who estimated the speed of the Buick at 100 m. p. h. at the time of impact, and of the testimony of Coroner Speaks who estimated the speed at 80 to 100 m. p. h. Trooper Brown had investigated from 1,000 to 1,200 accidents over a period of 16 years, had attended various schools relative to accident investigations, and had applied speed studies to accidents he had investigated. He based his opinion on the distance traveled after impact and the damage done. Coroner Speaks had investigated more than 200 accidents and had attended seminars on accident investigations. Their training and experience well qualified them as experts. The physical evidence, mainly that the tractor was torn in two and knocked 275 feet, the tobacco setter was almost unidentifiable, Alice's body was found 210 feet from the point of impact and the Buick came to rest 394 feet from the point of impact, was quite sufficient for the experts to relate the facts to their opinions. See Mulberry v. Howard, Ky., 457 S.W.2d 827 (1970); Ryan v. Payne, Ky., 446 S.W.2d 273 (1969).

We find no fault with the instructions. In Davidson v. Moore, Ky., 340 S.W.2d 227 (1960), it was pointed out that it was apparently the intention of the legislature in enacting KRS Chapter 189 to exclude farm tractors from rigid requirements as to equipment. KRS 189.010(12) excludes farm tractors from the definition of "vehicles." In addition to the common law duties, the court instructed the jury that it was Vanover's duty to "have at least one lamp, showing white on the left side of the farm tractor of sufficient power to reveal clearly the outline of the left side of the tractor to approaching vehicles from a distance of at least 100 feet." This closely followed the statute. Whether the statuto-

ry requirement applied to farm tractors, since by statutory definition a farm tractor was excluded as a "vehicle," we need not decide because the evidence was uncontradicted that the tractor was equipped with such a lamp.

The judgment is affirmed.

OSBORNE, C. J., and JONES, MILLIKEN, REED, STEINFELD and STEPHENSON, JJ., concurring.

PALMORE, J., dissenting.

PALMORE, Justice (dissenting).

The purpose of the exclusion quoted in the majority opinion is to make it clear that the policy does not cover the insured for any purpose when he is occupying or is struck by a vehicle which he owns but has not seen fit to include in his insurance policy. As I understand it, there is no reason Mr. Vanover could not have insured the tractor, and if he was going to run it on the highway he certainly should have done so. That the word "automobile" as used throughout the policy intended to include a farm tractor is made obvious by the fact that farm tractors while not on the public roads are *specifically excluded* from the definition of an automobile in the uninsured motorist clause. Only if tractors were otherwise to be considered as automobiles could there be any reason or necessity for a provision that for certain purposes and under certain conditions they will *not* be so considered. It is my opinion that the policy did not cover Mr. Vanover while he was operating his uninsured tractor. On that particular question Meridian Mutual Insurance Co. v. Siddons, Ky., 451 S.W.2d 831 (1970) is *not in point*. It did not involve an exclusion.

To illustrate the anomaly, if the majority opinion is correct, and the Collins vehicle had been another tractor instead of a passenger car, under the policy the Collins tractor would have been an "automobile" and the Vanover tractor would not.

**521**

I find myself in disagreement also with the decision that a witness may be permitted to estimate the speed of an automobile from the physical facts observed thereafter. The dynamics of an automobile collision being what they are, unless a person has had extensive training and experience in the actual staging of experimental accidents under a variety of conditions I do not believe his approximations of speed could possibly be sufficiently credible for acceptance in a court of law.