## R. S. Barbee & Company, et al. v. Bevins, Hopkins & Company, et al.

(Decided June 5, 1917.)

### Appeal from Pike Circuit Court.

1. Husband and Wife—Contract of Endorsement—Performance.— Where a married woman endorses in this state as surety her husband's note, which is made payable in another state where it is delivered by the husband, the contract is both made and to be performed in the other state and its validity will be determined by the laws of that state.

2. Husband and Wife—Contract of Endorsement.—Such a note being valid against the married woman by the laws of the state, where made and to be performed, will be enforced against her here, although the note would not have been enforceable against her if made here.

HOBSON & HOBSON and CHILDERS & CHILDERS for appellants.

W. K. STEELE and J. S. CLINE for appellees.

OPINION OF THE COURT BY JUDGE CLARKE—Reversing.

In September, 1913, R. S. Barbee & Co., then engaged in the general mercantile business in Williamson, W. Va., sold their business to Bevins, Hopkins & Co., a firm composed of J. B. Bevins, Harrison Bevins and Ester Hopkins, each of whom signed as principals notes given to Barbee & Co. in part payment for the mercantile business. Before delivery of the notes each of them was endorsed by Ella Bevins, wife of J. B. Bevins, and Minnie Hopkins, wife of Ester Hopkins, at their homes in Pike county, Kentucky, and turned over to J. B. Bevins, who carried them across the state line to Williamson, W. Va., and delivered them to Barbee & Co.

The notes were payable at the National Bank of Commerce, Williamson, W. Va. One of these notes, for $1,850.00, was discounted by Barbee & Co. before due to the National Bank of Commerce of Williamson, W. Va. The other note, for $1,568.29, was retained by Barbee & Co.

The notes not being paid when due, separate suits were brought thereon by the respective owners in the Pike circuit court, seeking to enforce collection against Mrs. Bevins and Mrs. Hopkins. Mrs. Hopkins defended on the ground that she was an infant when she signed the notes, and this defense is made out by her proof. Mrs. Bevins pleaded that she signed the notes as surety, and, being at the time a married woman, is not liable for their payment. The facts are not denied by Barbee & Co. and the bank, but they do deny the conclusion of law. The cases were consolidated and tried together and the petitions were dismissed as to Mrs. Hopkins and Mrs. Bevins, from which judgment this appeal is prosecuted by both Barbee & Co. and the bank, insofar as they were denied a judgment against Mrs. Bevins, but they do not complain of the judgment dismissing the petition against Mrs. Hopkins, as they concede the validity of her defense of infancy. There is no dispute as to any of the facts and the two law questions presented are: (1) Are the notes in question covered by the law of West Virginia or that of Kentucky? (2) Will the law of West Virginia, under which Mrs. Bevins is liable on the note, be enforced in Kentucky?

1.  It is insisted for appellee, Mrs. Bevins, that since she signed the notes in Pike county, Kentucky, the laws of this state apply, but it appears that after signing the notes, she delivered them to her husband, J. B. Bevins, who took them to West Virginia, where they were delivered and where they were, by their terms, payable. The contract was not consummated until the notes were delivered in West Virginia, where they were also payable, and the contract was both made and to be performed in that state. It is, therefore, clear that the laws of West Virginia, and not those of Kentucky, apply. Young v. Harris, 14 B. Mon. 556; Thompson v. Taylor, 54 L. R. A. 585 (N. J.).

2.  Counsel for appellees seemingly concede that the law of West Virginia is applicable to the notes and the validity of the contract under that law is proven, but they insist most strenuously that the contract shall not be enforced here because contrary to public policy of this state, as declared by section 2127, Kentucky Statutes, which exempts a married woman from liability as surety unless her personal estate shall have been set apart for that purpose by a deed of mortgage or other conveyance, it being conceded that Mrs. Bevins did not so set apart any of her property. It is true that it is

against the public policy of this state, as declared by the above statute, to permit a married woman by a contract made and to be performed here to bind her property as surety for the debt of another, except by mortgage or other conveyance, but it does not follow necessarily that it is against the public policy of this state to enforce such a contract when valid where made, because there may be, and often is, a difference in the public policy of the state with reference to the execution of a contract and to its enforcement. For example, it is against the public policy of this state, as declared in Union Central Life Insurance Co. v. Spinks, 119 Ky. 216, to give validity to a provision in a life insurance policy, for a period of limitation different from the statutory period where the contract is made and to be performed in this state, but it is not against the public policy of the state to enforce such a contract when valid where made. Clary v. Union Central Life Insurance Co., 142 Ky. 540; Union Central Life Insurance Co. v. Barnes, 175 Ky. 364. It is against the public policy of this state to enforce collection of a pedlar's note made and to be performed here unless endorsed across the face with the words "pedlar's note." Section 4223, Kentucky Statutes. But it is not against the public policy of the state to enforce the payment of such a note without that endorsement thereon when valid where made. Arnett v. Pinson, 108 S. W. 853. On the other hand, it is against the public policy of the state to give validity to a contract involving a violation of a penal statute and it is also against the public policy of the state to enforce such a contract even though valid where made. Other illustrations might be given to show that the public policy that will render invalid a contract made and to be performed in this state may or may not render unenforceable here a like contract valid where made. But these illustrations are sufficient to prove that the public policy of the state must be examined with reference to the particular kind of contract under consideration for a precedent of value. There is, however, a fundamental distinction, which, if observed, ought always to determine whether or not the public policy that will render invalid a contract made and to be performed within the state will or will not render enforceable in the state a contract made without the state, if valid where made. That distinction is pointed out in the recent case of Lee v. Belknap, 163 Ky. 418, wherein it is held that the mere fact that the law of another state differs in degree from

the law of this state does not make it so obnoxious to our laws as that our courts will not enforce it, but that our courts will not recognize the existence of foreign laws that are obnoxious to some well-founded rule of domestic policy established to protect the morals, safety or welfare of our people. The rule might otherwise be stated that under the principles of comity a contract, valid where made although not valid if made here, will be enforced by our courts where the question of public policy involved affects only the capacity of the parties to contract, that is the degree or extent of their ability to contract, but will not be enforced where the public policy involved affects the subject matter of the contract.

Under either of these statements of the rule this contract should be enforced here because the difference in the laws of the two states affects merely the extent of the ability of the parties to contract and does not affect in any way the subject matter of the contract. In other words, the difference in the laws of the two states affects only the question of expediency as to what extent the parties may contract and does not affect any quality of the contract itself, which is not in any sense inherently wrong or vicious or immoral. However, we do not need to look to any general rule in this particular case, as it has been decided in this state in at least two cases that it is not against the public policy to enforce here a contract made and to be performed in another state by a married woman, and valid under the laws of that state, even though the contract would not be valid if made here. In Young v. Bullen, 43 S. W. 687, Mrs. Young executed an obligation to Bullen in Missouri. At the time she executed the obligation in Missouri, same was not binding on her by the law of Kentucky, but was binding on her by the law of Missouri. She had property in Kentucky, and after she had moved to Pennsylvania, suit was brought against her here, the proceeding being as against a non-resident. Parties charged with the care of her property made defense, claiming that the courts of Kentucky ought not enforce the laws of Missouri in regard to a married woman's contract where the married woman would not have had the right to make such a contract in Kentucky. The court reviewed the authorities of this and other states and held that the courts of Kentucky would enforce the contracts of married women valid where made, although such contract would not be valid if made in Kentucky. To the same effect is Gibson v. Sublett, 82 Ky. 596.

The authorities cited by counsel for appellees need not be separately considered because none of them refer tò the enforcement of a married woman's contract when valid where made, and but express the public policy of this state upon other questions.

From the authorities cited above, it will be seen that it is not against the public policy of this state to enforce the contract of a married woman, valid where made, if otherwise unoffensive, even though it would be invalid if made here. It, therefore, results that the chancellor erred in dismissing appellants' petition against Mrs. Bevins.

Wherefore, the judgment in each case is reversed, with direction to enter judgment conforming herewith.