**THIRD NATIONAL BANK OF ASHLAND, Administrator of Estate of Phyllis Darlene McBrayer, Deceased, Appellant,**

**v.**

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Appellee.**

Court of Appeals of Kentucky.

March 25, 1960.

Rehearing Denied May 6, 1960.

Eldon L. Webb, John W. McKenzie, Ashland, for appellant.

H. R. Wilhoit, Grayson, for appellee.

PALMORE, Judge.

This is an action against an insurance company brought by an administrator holding an unsatisfied judgment for wrongful death against the driver of an automobile on which the defendant had issued a policy covering liability for personal injuries and property damage. Since the driver and the victim of the accident were sisters-in-law living in the same home the trial court found for the insurance company as a matter of law under a clause in the policy excluding from its coverage bodily injuries "to the insured or any member of the family of the insured residing in the same household as the insured." The plaintiff appeals from a judgment dismissing the complaint as to the insurance company.

The insurance policy was in effect at the time of the accident. It defined the word "insured" as including both the named insured and any other person using the car with his permission. Its personal injury coverage was made inapplicable to claims of the insured or members of his or her family residing in the same household as the insured. The named insured was Claude Sammons, the owner of the car, who was serving with the U. S. Army in Germany at the time the policy was issued and at the time of the accident. He had left the car with his father, W. T. Sammons, at the Sammons home in Flatwoods, Greenup County, with permission to the father and two brothers to use it. The father seldom, if ever, drove the car himself, but of his own volition he procured the policy in question for the protection of his other two sons, who would be the principal drivers while Claude was away.

On the night of the accident one of Claude's brothers, Tom Sammons, a regular user of the car, had a date with Joyce Sewell. She lived at Raceland in the home of her mother and father, Mr. and Mrs. Sherman McBrayer, as did her brother, Donald McBrayer, and his wife, Phyllis McBrayer (plaintiff's decedent). Tom was to play in a softball game at Ashland, and

Phyllis went along with him and Joyce to Ashland. Joyce had not eaten supper, so when they arrived at the ball park Tom got out and let Joyce have the car to go to a restaurant for supper. On the way back to the ball park from the restaurant, with Joyce driving the Sammons car accompanied by Phyllis, the girls had a collision with a car driven by one Woodie Thomas Hill, and Phyllis was fatally injured. Her administrator recovered a $12,500 judgment against Joyce Sewell and Woodie Thomas Hill jointly and collected $5,000 thereunder through Hill's insurance. Executions against Joyce and Hill for the balance of $7,500 were returned unsatisfied.

Joyce Sewell was self-supporting. She and her little daughter had come to live with her father and mother following a divorce from her husband a year and a half before the time of the accident. She had a bedroom and a half-bathroom in their 7-room house, for which she paid $10 per week. Phyllis and Joyce's brother, Donald McBrayer, had married about three years before the accident and had lived in the McBrayer home ever since, except for a period of some four months during the summer of 1953 when Donald had a job in South Bend, Indiana, and Phyllis went with him. Donald and Phyllis also had a small daughter. They had a bedroom of their own and shared a bathroom, paying $12 per week to the parents, Mr. and Mrs. McBrayer, and buying their own groceries. Joyce Sewell worked at Portsmouth, Ohio, during the day and paid Phyllis $10 per week to look after Joyce's little girl while she was at work. The entire family group (the elder Mr. and Mrs. McBrayer, Joyce and her daughter, and Phyllis and Donald and their daughter) shared the use of the living room, dining room, kitchen, and the one bathroom which had a tub. According to Donald, he and Phyllis ate at the same table as the others, but at different times. Joyce's testimony indicated that they "all" ate together at the same table "sometimes."

We have no difficulty in concluding that the blanket permission given by Claude

Sammons for his brother Tom to use the car while he was overseas was broad enough to imply the further authority on Tom's part to permit its operation by a third person for a purpose incidental to Tom's own use of the car, and for Tom's convenience. The facts in this case show that Tom did not himself drive the girls to the restaurant because he had to get to the ball game and did not have time. He had brought them from Raceland to Ashland, and they were under his protection. When he let Joyce have the car to go to the restaurant it was as much (or more) for his own convenience as for hers, for it relieved him, as her escort, of taking her himself. Similarly, on a previous occasion when they had arrived almost at game time Joyce had parked the car so that Tom would lose no time getting onto the playing field. Claude Sammons having left the car for the general, unlimited use of his father and brothers, that one or more of them might permit its occasional and temporary operation by a third party under conditions so natural as in this case can reasonably be assumed to have been expected by him, and thus embraced within the authority conferred on the father and brothers. Therefore, Joyce Sewell was included within the definition of "insured" under the policy. Cf. Wise v. Ohio Casualty Ins. Co., D.C.W.D.Ky.1951, 96 F.Supp. 380, and annotation, "Omnibus Clause of Automobile Liability Policy as Covering Accidents Caused by Third Person Who is Using Car with Consent of Permittee of Named Insured," 160 A.L.R. 1195.

Whether Phyllis McBrayer was a member of the "family" of Joyce Sewell and resided in the same "household" is a question which could easily be developed into an exercise in semantics. We do not believe, however, that a useful purpose would be served by a lengthy analysis of the ways in which these terms have been variously defined and construed. We are impressed by the fact that the clear purpose of the exclusion was to protect the insurer from over-friendly lawsuits, which nearly always

would exist where plaintiff and insured defendant are bound by ties of kinship and are living together. In the light of this purpose we cannot escape the conclusion that the McBrayers and Joyce were all of the same family and lived in the same household. They were related by blood or marriage, and since none of them occupied a complete apartment or dwelling unit to the exclusion of the others they all shared to some extent a common household. See Senn v. State Farm Mutual Automobile Ins. Co., Ky., 1956, 287 S.W.2d 439; Tomlyanovich v. Tomlyanovich, 1953, 239 Minn. 250, 58 N.W.2d 855, 50 A.L.R.2d 108, and annotation at 50 A.L.R.2d 120.

It is suggested by the appellant that the words "family" and "household" should be construed strictly against the insurance company, which wrote the policy, but we do not find enough room for doubt to allow a different construction from that adjudged by the trial court.

The judgment is affirmed.