STATE FARM MUTUAL AUTOMO-
BILE INSURANCE COMPANY,
Defendant Below, Appellant,

v.

Lois DAPRATO, Plaintiff
Below, Appellee.

No. 348, 2003.

Supreme Court of Delaware.

Submitted: Nov. 4, 2003.
Decided: Dec. 17, 2003.

---

Colin M. Shalk (argued) and Thomas P. Leff of Casarino, Christman & Shalk, Wilmington, Delaware, for Appellant.

Nicholas H. Rodriguez and Noel E. Primos (argued) of Schmittinger and Rodriguez, P.A., Dover, Delaware, for Appellee.

Before VEASEY, Chief Justice, HOLLAND, BERGER, STEELE and JACOBS, Justices (constituting the Court en banc).

STEELE, Justice.

In this case of first impression we are asked to decide whether a "household" exclusion found in a personal liability umbrella policy that includes excess automobile liability coverage is repugnant to Delaware's Financial Responsibility Laws. Further, we examine whether the trial judge, by granting the claimant summary

judgment, misapplied our decision in *Nationwide v. Seeman.*[1]

We hold that the public policy embraced by Delaware's Financial Responsibility Laws does not invalidate the unambiguous household exclusion found in this claimant's State Farm personal liability umbrella policy.[2] We also hold that the trial judge interpreted the scope of our decision in *Seeman* too broadly and misapplied it to the facts of this case. We therefore REVERSE the decision of the trial judge and direct the entry of summary judgment in favor of State Farm.

## I

On November 7, 2001, Peter Daprato drove his State Farm insured vehicle in an accident in which his wife Lois was injured. Peter Daprato admitted that he caused the accident. Peter and Lois Daprato were the named insureds on two State Farm Mutual Insurance Company policies. The first provided "motor vehicle liability coverage" of $100,000 per person and $300,000 per accident for the vehicle involved in the collision. The second policy, designated as a "personal liability umbrella policy," provided excess liability coverage, up to a limit of $1,000,000, for the risks insured by the primary "motor vehicle liability policy" in addition to coverage for risks such as false arrest, malicious prosecution, defamation, invasion of privacy, assault and battery.

State Farm paid Lois Daprato $100,000 under the provisions of the primary "mo-

tor vehicle liability policy." She then demanded additional compensation for her bodily injuries and medical expenses under the personal liability umbrella policy. State Farm denied the claim on the basis of an exclusion in the personal liability umbrella policy coverage "for personal injury to the named insured, spouse, or anyone within the meaning of part a. or b. of the definition of insured, ..." ("the household exclusion")[3].

Lois Daprato filed a declaratory judgment action against State Farm in Superior Court, arguing that the household exclusion in the personal liability umbrella policy as applied to her automobile accident claim, was contrary to the broad scope of the public policy embraced by Delaware's Financial Responsibility Laws. She argued that the trial judge should follow *Seeman* and that if he did, he must invalidate the umbrella policy exclusion "as against public policy." The parties filed cross-motions for summary judgment. The trial judge concluded that the household exclusion set forth in the State Farm personal liability umbrella policy was void and unenforceable as applied to Lois Daprato's claim for damages from the automobile accident. He entered an Order granting Lois Daprato summary judgment. State Farm appealed.

## II

■ We review questions of law and construction of contracts decided by the Superior Court *de novo.*[4]

---

1. 702 A.2d 915 (Del.1997).

2. DEL. CODE ANN. tit. 21, §§ 2118, 2902 (1995); DEL. CODE ANN. tit. 18, § 3902 (1999).

3. In pertinent part, the policy defines "Insured" as both: a) the named insured; and b) the following members of the named insured's household: (1) the named insured's relatives; and ... State Farm denied the

claim because Mrs. Daprato was both a named insured and the spouse of a named insured. The parties refer to the policy language as "the household exclusion."

4. *Grand Ventures, Inc. v. Whaley,* 632 A.2d 63, 66 (Del.1993); *Oberly v. Kirby,* 592 A.2d 445, 457 (Del.1991); *Judge v. Rago,* 570 A.2d 253, 255 (Del.1990).

## III

### Delaware's Financial Responsibility Laws

 Delaware's Financial Responsibility Laws are designed to protect citizens by requiring each driver to carry minimum insurance coverage through a duly certified "motor vehicle liability policy" issued by an authorized insurance carrier as proof of the financial responsibility of the named insured.[5] The clear purpose of the Financial Responsibility Laws is to provide primary insurance coverage for all personal injury claims arising out of an automobile accident, regardless of the injured person's relationship to the insured.[6] In *Seeman*, this Court explained that "the law admits of no exclusion intended to deny compensation to a portion of the class of victims which the [Financial Responsibility Laws] were designed to protect."[7]

 But, the Financial Responsibility Laws simply do not apply to the umbrella policy at issue here. The Dapratos maintained a separate "motor vehicle liability policy" that satisfied the statutory coverage for the class of victims the Financial Responsibility Laws were designed to protect. In fact, the umbrella policy *required* the Dapratos to maintain that separate, primary policy. The personal liability umbrella coverage purchased by the Dapratos did indeed contain excess automobile liability coverage, but that coverage was a discretionary, contractual matter between them and State Farm. The scope of that coverage was subject neither to the limita-

tions nor to the requirements of the Financial Responsibility Laws.[8] The public policy underlying the Financial Responsibility Laws does not extend to coverage purchased by contract in excess of the full amount of coverage contracted for and purchased in a primary "motor vehicle liability policy." State Farm made the Dapratos' "motor vehicle liability policy" coverage available to Lois Daprato, who was within the class of injured persons the General Assembly and the *Seeman* holding intended to benefit. These public policy concerns associated with the Dapratos' primary "motor vehicle liability policy" do not control the permissible coverages and exclusions separately contracted for in the Dapratos' personal liability umbrella policy.

### The Seeman Decision

In *Seeman*, we concluded that "any household exclusion in a Delaware *automobile insurance policy* is void and unenforceable based on the established precedents of this Court..."[9] *Seeman* is distinguishable from the matter *sub judice* because a material distinction exists between a primary "motor vehicle liability policy" and a personal liability umbrella policy that provides excess coverage for automobile accidents as well as a multitude of other risks. Both policies provided coverage by contract, but only the former comes within the ambit of the Financial Responsibility Law. The trial judge no doubt recognized that distinc-

---

**5.** DEL. CODE ANN. tit. 21, §§ 2118, 2902; DEL. CODE ANN. tit. 18, § 3902.

**6.** *State Farm Mut. Auto. Ins. Co. v. Wagamon*, 541 A.2d 557, 558 (Del.1988). In *Wagamon*, this Court invalidated a household exclusion contained in a basic automobile insurance policy, holding that the exclusion violated the public policy underlying the Financial Responsibility Laws. *Id.* at 560–61.

**7.** 702 A.2d at 919 (quoting *Wagamon*).

**8.** There is no indication that the umbrella policy was certified or issued in satisfaction of DEL. CODE ANN. tit. 21, § 2902.

**9.** 702 A.2d at 921 (emphasis added).

tion but confronted with compelling arguments by both parties and the fact that *Seeman* referred to "automobile insurance policy" and not "motor vehicle liability policy," a statutory term of art, simply overbroadly interpreted *Seeman's* application to the facts of this case. While we understand why the trial judge expanded *Seeman's* scope, we believe it to be improvident for this Court to invade the province of the General Assembly and expand the ambit of the Financial Responsibility Laws on a record that does not address the myriad of societal issues that must be considered before altering private contracts *post hoc* on public policy grounds. A legislative body is far better suited to gather and weigh the legislative facts[10] and hear the arguments of those interested parties over the costs and benefits of extending the policy underlying the Delaware Financial Responsibility Law to excess automobile accident coverage in personal liability umbrella policies.[11] As we see it, in the absence of a clear legislative pronouncement, this dispute should be resolved as a simple matter of private contract.

### IV

 Neither public policy nor Delaware law renders unenforceable or invalid the household exclusion as applied to Lois Daprato, because the Daprato's umbrella policy falls wholly outside the ambit of the Financial Responsibility Laws. Once an insured contracts for specific coverage in a personal liability excess policy above the coverages purchased in a primary "motor vehicle liability policy," the costs and benefits associated with that contract are matters solely within the discretion of the contracting parties.

Accordingly, we REVERSE and REMAND the trial judge's decision granting summary judgment in favor of Lois Daprato and direct that summary judgment be entered on REMAND in favor of State Farm.

---

**10.** "When an agency [or court] wrestles with a question of law or policy, it is acting legislatively, [a]nd the facts which inform its legislative judgment may conveniently be denominated legislative facts." Kenneth Culp Davis, *An Approach to Problems of Evidence in the Administrative Process*, 55 Harv. Law Rev. 364, 402 (1942).

**11.** What, for example, would be the effect on underwriting, the availability of coverage, the costs of that coverage, and the carriers' desire to offer a policy without the "household exclusion?" Our record offers nothing from which one can make a reasoned judgment on any of these issues of consequence.