STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY; and State Farm Fire and Casualty Company, Appellants,

v.

Carma MARLEY, Individually and As Next Friend of Rachel Marley; David Marley, an Unmarried Infant; and Larry Marley, Appellees.

No. 2002–SC–0846–DG.

Supreme Court of Kentucky.

Dec. 16, 2004.

Barton D. Darrell, Paul T. Lawless, Bell, Orr, Ayers & Moore, P.S.C., Bowling Green, Counsel for Appellants.

Michael K. Bishop, Harlan E. Judd, III, Bowling Green, Richard Hay, Rhonda Hatfield–Jeffers, Keith A. Upchurch, Somerset, David V. Scott, Scott, Forrest & Bourne, New Albany, IN, Counsel for Appellees.

WINTERSHEIMER, Justice.

This appeal is from an opinion of the Court of Appeals which determined that

the household exclusion contained in the personal liability umbrella policy is void against the public policy of the Commonwealth of Kentucky.

The questions presented are whether the household exclusion in the personal liability umbrella policy should be upheld as valid; whether the personal liability umbrella policy is optional coverage that is not governed by the Motor Vehicle Reparations Act; and whether decisions from courts in foreign jurisdictions support the validity and enforceability of such clauses and should be followed.

On December 17, 1999, Larry Marley, the insured, a resident of Indiana, was en route to Florida in the family van when he fell asleep at the wheel and lost control of the vehicle. One child, Heather, was killed. Sixteen-year-old Rachel received injuries resulting in paraplegia, and her mother, Carma, was seriously injured. David, a 12–year–old twin of Heather, was also injured. Carma, Rachel and David are all residents of Indiana and filed an action for damages against the father in Simpson Circuit Court in Kentucky. A separate declaratory judgment action was brought to determine the amount of liability insurance coverage available to Larry under the automobile policy with limits of $100,000 per person/$300,000 per accident, issued in Indiana by State Farm Mutual Automobile Insurance Company, and a personal liability umbrella policy with limits of $1 million issued in Indiana by State Farm Fire & Casualty Company.

Applying Kentucky law in interpreting both policies, the trial judge found that the household exclusion in the primary automobile policy was unenforceable in Kentucky. That decision has never been appealed. The trial judge also found that the automobile policy contained an "out-of-state" coverage provision, which reduced the amount of Larry Marley's liability coverage to the minimum policy limits required by the Kentucky Motor Vehicle Reparations Act, KRS 304.39–110. Finally, the trial judge determined that pursuant to *Kentucky Farm Bureau Mut. Ins. Co. v. Thompson*, Ky., 1 S.W.3d 475 (1999), the household exclusion in Larry Marley's umbrella policy is valid and enforceable.

The Court of Appeals reversed on the two issues appealed. Distinguishing *Thompson, supra*, it held that the household exclusion in the umbrella policy as applied to automobile liability coverage was void as against the public policy of this Commonwealth and was unenforceable. It also held that the out-of-state coverage provision does not limit the plaintiffs' recovery to the minimum liability amount contained in the MVRA. The insurance company sought discretionary review in this Court. While that motion was pending, the parties filed a joint motion stating that all claims relating to the automobile policy had been settled and were now moot, and asked this Court to consider only the issue relating to the household exclusion in the umbrella policy. This Court granted discretionary review and also the joint motion.

## I. Enforceability of Policy

The critical issue is whether a household exclusion in the personal liability umbrella policy as it applies to automobile liability coverage violates Kentucky public policy. In *Lewis v. West American Ins. Co.*, Ky., 927 S.W.2d 829 (1996), household exclusions in automobile liability policies were held to be unenforceable regardless of the policy limits because they violate Kentucky public policy. In *Thompson* it was held that the public policy of the state only precludes household exclusions in automobile liability policies, not other types of liability policies such as farm owner policies.

State Farm argues that Kentucky courts have consistently recognized the freedom to contract, and the unambiguous household exclusion in this personal liability umbrella policy should be upheld. In effect, State Farm relies on *Thompson* in support of the contention that *Lewis, supra,* is limited to automobile policies and the personal liability insurance policy is not an automobile insurance policy. The Marley family responds that Kentucky courts have consistently recognized that insurance policy provisions which violate the public policy of this State are not enforceable.

The parties stipulated that under Indiana law the household exclusion clauses in both policies are valid and enforceable. The Marleys were all residents of Indiana. The policies were issued in Indiana and the vehicle was primarily garaged in Indiana. The only contact the Marley family had with Kentucky is that the accident occurred while driving through the Commonwealth on their way to Florida. It could be said that under traditional choice of law principles, the law of Indiana is applicable. However, Kentucky courts have traditionally refused to apply the law of another state if that state's law violates a public policy as declared by the Kentucky legislature or courts. *See R.S. Barbee & Co. v. Bevins, Hopkins & Co.,* 176 Ky. 113, 195 S.W. 154 (1917). It is no longer contested by either party that Kentucky law applies in this case.

We recognize that family exclusion provisions were once common in the automobile insurance industry and served to protect the company from lawsuits where there was a family relationship between the tortfeasor and the injured party. *See Orange v. State Farm Mut. Auto. Ins. Co.,* Ky., 443 S.W.2d 650 (1969). One of the first cases to consider the validity of a family exclusion clause in an automobile insurance contract since the adoption of the MVRA held that family or household exclusion clauses that dilute or eliminate the minimum requirement of basic reparations benefits or tort liability coverage of the MVRA were void and unenforceable. *Bishop v. Allstate Ins. Co.,* Ky., 623 S.W.2d 865 (1981). The *Bishop* court reasoned that the stated purpose of the MVRA was to ensure that a driver be insured to a minimum level. Any exclusion provision that contravenes the purpose and policy of the compulsory insurance act was essentially unenforceable and void. Fifteen years after *Bishop* was rendered, this Court in *Lewis* held that all family exclusion clauses in liability insurance policies are repugnant to the public policy of Kentucky and are, therefore, void and unenforceable. Three years after that decision, this Court in *Thompson* considered the application of the *Lewis* doctrine to non-automobile liability insurance policies. In that case, Thompson had in effect a farm-owners policy of liability insurance that contained a household exclusion. His underage daughter was injured while riding on a tractor he owned and was operating. She subsequently filed an action against him for negligent operation. *Thompson* held that the unenforceable aspects of the exclusionary provisions were limited to automobile policies.

The practical issue here is whether the umbrella policy is an automobile policy as required by *Thompson.* Clearly, *Thompson* is different from this case because it involved a farm tractor covered under a farm policy. Both by statute and case law, a farm tractor is not an automobile within the meaning of the MVRA. *See* KRS 187.290(4) and *Kentucky Farm Bureau Mut. Ins. Co. v. Vanover,* Ky., 506 S.W.2d 517 (1974). The insurance policy in this case covers automobile accidents. The mere fact that the policy is labeled as an umbrella policy and written separately

from the underlying automobile policy, or that it covers claims other than automobile accidents, does not validate an exclusion provision of this nature.

The MVRA uses the term "security." The Act does not use the word "automobile insurance." Although *Thompson* limited the *Lewis* opinion to an automobile insurance policy only, we must conclude that it was not the intention of this Court to permit household exclusions in umbrella policies when the underlying claim arose from a motor vehicle accident.

## II. Optional/Mandatory Coverage

State Farm contends that umbrella coverage is optional and is not governed by the directions of the MVRA and that accordingly there is no public policy question involved. We disagree.

This Court finds no reason to discriminate between those with minimum coverage required by law and those with higher, optional coverage. *See Lewis* at 833. An umbrella insurance policy must be considered in accordance with the nature of the claims that it is called upon to cover. An umbrella policy was purchased to serve as an extension of the automobile policy limits and any distinction between the automobile liability and an umbrella liability policy is a distinction without a difference.

We determine that there is no difference between the security provided by an optional umbrella policy and the security provided by mandatory minimum liability coverage. It is clear that the public policy of Kentucky is to ensure that victims of motor vehicle accidents on Kentucky highways are fully compensated. The household exclusion in the umbrella policy as it applies to automobile liability coverage violates that public policy and is void and unenforceable.

## III. Foreign Authorities

State Farm argues that the question of whether a household exclusion contained in a personal liability umbrella policy is valid and enforceable is an issue of first impression in Kentucky. The insurance company contends that the majority of courts in other states presented with this issue have upheld the validity and enforceability of such exclusions in umbrella policies. State Farm cites eight cases from six different states in support of its contention. We are not persuaded.

The essential rationale in *Thompson* and *Lewis* is based on the fact that automobile liability insurance policies come within the ambit of MVRA. This claim arises from the ownership, operation and use of a motor vehicle within Kentucky and, consequently, the automobile liability provisions of the umbrella policy come within the purview of the MVRA. It is interesting to note that State Farm recognizes that the Washington Court of Appeals in *Safeco Ins. Co. of Illinois v. Automobile Club Ins. Co.*, 108 Wash.App. 468, 31 P.3d 52 (2001), found the household exclusion in an umbrella policy to be unenforceable as a violation of the public policy of the State of Washington.

It is the decision of this Court that pursuant to Kentucky law, the household exclusion in the personal liability umbrella policy as applied to automobile liability coverage is void and unenforceable.

The opinion of the Court of Appeals is affirmed.

LAMBERT, C.J., GRAVES and STUMBO, JJ., concur.

COOPER, J., dissents by separate opinion and is joined by JOHNSTONE and KELLER, JJ.

COOPER, Justice, dissenting.

The majority opinion repeats numerous extrajudicial facts gratuitously recited by Appellees in their brief to the Court of Appeals. The record in this case contains no testimonial evidence. Specifically, there is no evidence of the extent of any injuries sustained by any of the Appellees, and neither this declaratory judgment action nor the complaint filed in the separate action brought by Appellees against Larry Marley for their personal injuries asserts a claim for the alleged wrongful death of another family member. The parties submitted this declaratory judgment action to the trial court only on the following "Stipulation of Facts":

1. On December 17, 1999, Larry Marley was involved in a one-car accident while traveling on 1–65 in Simpson County, Kentucky.

2. The passengers in the vehicle being driven by Larry Marley at the time of the accident included his wife, Carma Marley, and three minor children, Rachel, Heather, and David Marley.

3. At the time of the accident, Larry Marley, Carma Marley, and their three children resided in the same household in the state of Indiana.

4. At the time of the accident, Larry Marley was insured with State Farm Mutual Automobile Insurance Company under Automobile Policy # 629 2776–B15–14J, a copy of which is attached hereto as Exhibit "A".

5. At the time of the accident, Larry Marley was insured with State Farm Fire and Casualty Company under a Personal Liability Umbrella Policy # 14–45–8111–8, a copy of which is attached hereto as Exhibit "B".

6. Larry Marley purchased said policies (Exhibits A & B) in the state of Indiana from an Indiana-based agent of State Farm.

7. The vehicle involved in the December 17, 1999 accident, a 1997 Dodge Van (VIN # 2B6HB21Y6VK548866), was listed as an insured vehicle under State Farm Mutual Automobile Policy # 629 2776–B15–14J, and was principally garaged, licensed and registered in the state of Indiana.

8. Larry Marley maintains a driver's license issued by the state of Indiana.

9. State Farm Mutual Automobile Insurance Company is an insurance company which does business throughout the United States of America, including the Commonwealth of Kentucky, with its home office in Bloomington, Illinois.

10. State Farm Fire and Casualty Company is an insurance company which does business throughout the United States of America, including the Commonwealth of Kentucky, with its home office in Bloomington, Illinois.

## I. POLICY PROVISIONS.

Exhibit A to the stipulation, Policy # 629 2776–B15–14J (the automobile policy), identifies the "named insured" as "MARLEY, LARRY W & CARMA M" and contains an exclusion in Section I—Liability—Coverage A for any bodily injury to:

. . .

c. ANY INSURED OR ANY MEMBER OF AN INSURED'S FAMILY RESIDING IN THE INSURED'S HOUSEHOLD.

Exhibit B to the stipulation, policy # 14–45–8111–8 (the umbrella policy), also identifies the "named insured" as "MARLEY, LARRY W & CARMA M." Exclusion 10 of the EXCLUSIONS section of the policy excludes coverage:

10. for personal injury to the named insured, spouse or anyone within the

meaning of part a. or b. of the definition of insured.

The DEFINITIONS section of the umbrella policy defines "insured" as:

a.   the named insured;

b.   the following residents of the named insured's household:

(1) the named insured's relatives; ...

...

Thus, both the automobile policy and the umbrella policy contain "household exclusion" clauses that preclude coverage for injuries sustained by Carma Marley or any of her children. The parties stipulated in the Court of Appeals that such exclusions in automobile liability policies are valid in Indiana. *Transamerica Ins. Co. v. Henry,* 563 N.E.2d 1265, 1268–69 (Ind.1990) (liability coverage); *Jones v. State Farm Mut. Auto. Ins. Co.,* 635 N.E.2d 200, 203 (Ind. Ct.App.1994) (underinsured motorist coverage). Such exclusions in automobile liability insurance policies are invalid in Kentucky. *Lewis v. W. Am. Ins. Co.,* Ky., 927 S.W.2d 829, 836 (1996) (contrary to public policy pronounced by Court) (plurality opinion with two justices concurring in result); *Bishop v. Allstate Ins. Co.,* Ky., 623 S.W.2d 865, 866 (1981) (contrary to public policy established by legislature if exclusion eliminates minimum coverage required by KRS 304.39–110(1)(a)). We clarified in *Kentucky Farm Bureau Mutual Insurance Co. v. Thompson,* Ky., 1 S.W.3d 475 (1999), that those holdings were mandated by the public policy embodied in the Motor Vehicle Reparations Act (MVRA) and did not apply to household exclusion clauses in non-automobile liability insurance policies. "To the extent that the language of our holding in *Lewis* was overly broad, we now limit the holding of that case to automobile insurance policies only." *Id.* at 477.

The EXCLUSIONS section of the automobile policy also contained the following provision:

1.   Out–of–State Coverage
   If an insured under the liability coverage is in another state or Canada and, as a nonresident, becomes subject to its motor vehicle compulsory insurance, financial responsibility or similar law:

a.   the policy will be interpreted to give the coverage required by law; and

b.   the coverage so given replaces any coverage in this policy to the extent required by the law for the insured's operation, maintenance or use of a car insured under this policy.

...

This provision comports with state statutes that require insurers doing business within the state to provide minimum required coverages for their out-of-state insureds while operating motor vehicles within the state. *E.g.,* KRS 304.39–100(2):

An insurer authorized to transact or transacting business in this Commonwealth shall file ... a form ... declaring that in any contract of liability insurance for injury, wherever issued, covering the ownership, maintenance or use of a motor vehicle ... while the vehicle is in this Commonwealth shall be deemed to provide the basic reparation benefits coverage and *minimum security* for tort liabilities required by this subtitle, *except a contract which provides coverage only for liability in excess of required minimum tort liability coverage....*

(Emphasis added.) Thus, even though the household exclusion clause in the automobile policy is valid under Indiana law, both the policy and KRS 304.39–100(2) require State Farm to provide minimum limits lia-

bility coverage while the insured vehicle is being operated in Kentucky. However, the last clause of the statute excludes an umbrella policy from that statutory requirement.

The Out–of–State Coverage provision was construed under Indiana law in *State Farm Mutual Automobile Insurance Co. v. Smith,* 812 F.Supp. 141, (S.D.Ind.1992). There, an Indiana resident (Smith) purchased in Indiana a policy of liability insurance from State Farm to cover a vehicle licensed and garaged in Indiana. Smith sustained injuries in Kentucky while a passenger in the vehicle then being driven by a permissive user (Evanoff). Evanoff's liability insurer paid its policy limits to Smith. State Farm also paid its basic reparation benefits (BRB) coverage limits to Smith, but denied coverage for Smith's claims under her own liability and underinsured motorist (UIM) coverages because both coverages were subject to household exclusion clauses. Smith claimed those coverages were payable under the Out–of–State Coverage provision because household exclusion clauses are invalid in Kentucky. Applying Indiana choice-of-law principles, the district court first held that Indiana was the state of "most intimate contact" and, therefore, that Indiana law determined whether Smith was entitled to payment under her policy's liability and UIM coverages. *Id.* at 144. The court then concluded that the Out–of–State Coverage provision did not require "wholesale implementation of Kentucky law." *Id.*

> The policy does not say that out-of-state coverage is governed, or the policy interpreted, by the law of the state in which the collision occurs. . . . The Court finds such language to provide for only such minimum mandatory coverage as required by the [MVRA].

*Id.* Noting that the minimum mandatory liability coverage required by KRS 304.39–110(1)(a) was $25,000, the district court concluded that Evanoff's own liability coverage satisfied that requirement. *Id.* The court specifically declined to hold that *Bishop v. Allstate* required payment of more than the minimum coverage mandated by the Act if two or more policies provided liability coverage for the same accident.

> In *Bishop,* the court noted that the stated purpose of the KMVRA is to assure that a driver be insured to a minimum level, and because the household exclusion effectively renders a driver uninsured to the extent of the reduction or elimination, such an exclusion was held to contravene the purpose and policy of the Act. The household exclusion in the Smith policy does not serve to render the *driver* uninsured because Evanoff was insured and did provide liability coverage.

*Id.* at 144–45.

The district court then held that, under Indiana law, the household exclusion clause precluded recovery under the underinsured motorist coverage, and that the Out–of–State Coverage provision did not require a different result because underinsured motorist coverage is not mandatory in Kentucky. *Id.* at 145–46. *See* KRS 304.39–320(2).

## II. TRIAL COURT.

In the case *sub judice,* the Simpson Circuit Court held that the household exclusion clause in the umbrella policy was valid under Kentucky law, citing *Kentucky Farm Bureau v. Thompson,* obviously concluding that an umbrella policy is not an automobile insurance policy; that the household exclusion in the automobile policy was invalid under Kentucky law, citing *Lewis v. West American;* but that the Out–of–State Coverage provision of the automobile policy applied to reduce the liabil-

ity limits to $25,000/$50,000, citing *State Farm v. Smith*, obviously concluding that Indiana law applied to the validity of the household exclusion clause as modified by the Out–of–State Coverage provision. The plaintiffs appealed.

## III. COURT OF APPEALS.

The Court of Appeals reversed, concluding that the umbrella policy was an automobile insurance policy, thus was within the holding of *Lewis v. West American*. It also held that it would not apply Indiana law to the policy because the household exclusion clause violated the public policy of Kentucky. The Court then held that KRS 304.39–100(2) applies to umbrella policies, quoting a portion of the statute but conveniently omitting the language that excepts from the statute "a contract which provides coverage only for liability in excess of required minimum tort liability coverage." Finally, it held that the Out–of–State Coverage provision did not mean what it clearly says:

> State Farm attempts to persuade this court that the intent of the provision is to convert the amount of the [liability] coverage provided by the policy, $100,000/$300,000, to the minimum amount required by the foreign state. The result of such interpretation would be that while Mr. Marley operated his vehicle within the state of Indiana he would enjoy a greater amount of coverage, while upon crossing the state line into Kentucky, State Farm's obligation is reduced to $25,000/$50,000, the minimum amount required by Kentucky . . . .

Of course, the fatal flaw in that reasoning is that if Mr. Marley had been operating his vehicle within the state of Indiana when the subject accident occurred, he would have enjoyed *no* coverage, not "a greater amount of coverage," than while operating it in Kentucky. The Out–of–

State Coverage provision applies only when Indiana law would afford no coverage but the law of the state where the accident occurred requires minimum mandatory coverage. *State Farm v. Smith*, 812 F.Supp. at 143–44. If Mr. Marley had injured someone other than a member of his household, the liability limits of his automobile policy would have been $100,000/$300,000 no matter where the accident occurred.

## IV. CHOICE OF LAW.

The parties have filed a stipulation to the effect that the claim pertaining to the automobile policy has been settled and that "the only issue for consideration for purposes of the pending Motion for Discretionary Review is whether a household exclusion in a personal liability umbrella policy is void and unenforceable as against public policy *and* a violation of this Court's ruling in *Lewis v. West American Ins. Co.*, Ky., 927 S.W.2d 829 (1996)." (Emphasis added.) The majority opinion interprets this stipulation as removing from consideration the issue of whether Kentucky law or Indiana law applies to the interpretation of this policy. *Ante* at 35 ("It is no longer contested by either party that Kentucky law applies to this case."). I do not construe the stipulation so broadly; for if Indiana law applies to this insurance contract, it would not be against the public policy of Kentucky to apply that law in a case where no citizen of Kentucky is involved and Kentucky's only contact with the parties is the fortuitous fact that the accident occurred here. The circuit court obviously applied choice of law principles in deciding that Indiana law applied to the household exclusion clause as modified by the Out–of–State Coverage provision. Likewise, the Court of Appeals addressed the choice of law issue before erroneously concluding that Kentucky's public policy overrides Indiana law. Appellant argues

in its brief that household exclusion clauses are valid in Indiana where Appellees reside and where the policy was issued. Appellant's brief, at 10 n.6, 17–18. The majority opinion, itself, addresses the choice of law issue by citing *R.S. Barbee & Co. v. Bevins, Hopkins & Co.*, 176 Ky. 113, 195 S.W. 154 (1917), for the proposition that Kentucky will not enforce the law of another state if that state's law is against the public policy of this Commonwealth. *Ante*, at 35. Thus, whether Kentucky law applies to this case remains a hotly contested issue.

The majority's application of *R.S. Barbee & Co.* to the facts of this case is seriously misplaced. The issue in that case was whether a contract entered into in West Virginia could be enforced in Kentucky *against a Kentucky resident.*

> [T]he mere fact that the law of another state differs in degree from the law of this state does not make it so obnoxious to our laws that our courts will not enforce it, but ... our courts will not recognize the existence of foreign laws that are obnoxious to some well-founded rule of domestic policy established to protect the morals, safety or welfare *of our people.*

*Id.*, 195 S.W. at 155 (emphasis added). *Barbee* cannot be construed to hold that we will apply our public policy to provide rights to nonresidents to which they are not entitled under the law of their home state. Because all of the parties to this action are residents of Indiana (indeed, all are members of the same family), this action could have been brought in Indiana in the forum where Larry Marley is domiciled. Instead, because household exclusion clauses are valid in Indiana, they brought their action in Kentucky where such clauses are invalid. Forum-shopping is also against the public policy of Kentucky.

The Erie rule was designed to prevent a result that for the same transaction the accident of a suit by a nonresident litigant in a federal court instead of in a state court a block away should lead to a substantially different result. The Court of Appeals of New York said in *Rederi* that this rationale would apply even if the Supremacy Clause did not require it to conform to and apply the provisions of the federal statute. *Any other conclusion would place the court's stamp of approval on a particularly offensive form of forum-shopping.*

*Fite & Warmath Const. Co., Inc. v. MYS Corp.*, Ky., 559 S.W.2d 729, 733 (1977) (emphasis added).

Under Kentucky's choice of law jurisprudence, Indiana law applies to the construction of this insurance contract. The seminal Kentucky case on this issue is *Lewis v. American Family Insurance Group*, Ky., 555 S.W.2d 579 (1977). In that case, two brothers, both residents of Indiana, were injured in a vehicular collision in Kentucky caused by the negligence of an uninsured motorist who was a resident of Kentucky. The brothers brought suit in Kentucky against the negligent party and against an insurance company that provided uninsured motorists (UM) coverage in an insurance policy issued to their uncle with whom they resided. The UM carrier denied coverage, relying on two policy exclusions. As here, an Indiana resident sought to recover in Kentucky under a policy issued in Indiana to an Indiana resident to cover a vehicle licensed and garaged in Indiana. The initial issue was whether Kentucky law or Indiana law governed the construction and application of the policy exclusions.

> The threshold issue which must be decided is whether Indiana or Kentucky law ought to be applied in this case. Traditionally the rule has been that the

validity of a contract is to be determined by the laws of the state in which it was made, while the remedies to be enforced are those provided by the state in which suit is brought. *Fry Bros. v. Theobold*, 205 Ky. 146, 265 S.W. 498 (1924). Such a mechanical approach is no longer favored. The modern test is "which state has the most significant relationship to the transaction and the parties." Restatement of Conflict of Laws 2d, sec. 188 (1971). Using this test, in most cases the law of the residence of the named insured will determine the scope of his automobile liability insurance policy. Section 193 of the Restatement of Conflict of Laws 2d, states:

> "Contracts of Fire, Surety or Casualty Insurance The validity of a contract of fire, surety or casualty insurance and the rights created thereby are determined by the local law of the state which the parties understood was to be the principal location of the insured risk during the term of the policy, unless with respect to the particular issue, some other state has a more significant relationship under the principles stated in sec. 6 to the transaction and the parties, in which event the local law of the other state will be applied."

Because the insurance contracts in this case were entered into in Indiana between Indiana parties and concerned automobiles which were licensed and garaged in Indiana, we are of the opinion that Indiana law should govern the rights and liabilities of the parties under these contracts.

*Id.* at 581–82. *See also Snodgrass v. State Farm Mut. Auto. Ins. Co.*, Ky.App., 992 S.W.2d 855 (1998) (Virginia law applied to uphold exclusion applicable to underinsured motorist (UIM) coverage, which exclusion would have been invalid under Kentucky law, where insurance policy was issued in Virginia to a Virginia resident providing coverage for a vehicle licensed and garaged in Virginia even though insured was injured in Kentucky in a vehicular collision caused by a Kentucky resident) (disc. rev. denied April 14, 1999); *Bonnlander v. Leader Nat'l Ins. Co.*, Ky. App., 949 S.W.2d 618 (1997) (same factual scenario; Indiana law applied to deny UIM coverage that would have been recoverable under Kentucky law) (disc. rev. denied August 27, 1997); *Hammer v. State Farm Mut. Auto. Ins. Co.*, 950 F.Supp. 192, 194 (W.D.Ky.1996) (applying Kentucky law) (same factual scenario; Indiana law applied to uphold set-off and anti-stacking provisions in UIM policy even though similar set-off provision had been deleted from KRS 304.39–320(2), 1988 Ky. Acts, ch. 180, § 1, and anti-stacking provisions had been declared contrary to Kentucky public policy in *Allstate Ins. Co. v. Dicke*, Ky., 862 S.W.2d 327, 329 (1993)).

The application of Indiana law in this case would not violate any public policy of Kentucky because such would not deny benefits to a Kentucky resident who would otherwise be entitled to them under our law; and Kentucky has no interest in applying our public policy to provide benefits to Indiana residents who would not be entitled to them under Indiana law.

The vast majority of jurisdictions that have considered this issue have concluded that household exclusion clauses are enforceable if valid where the policy was issued and where the parties reside even if invalid in the state where the accident occurred. *E.g., Am. Family Mut. Ins. Co. v. Williams*, 839 F.Supp. 579, 583 (S.D.Ind. 1993) (applying Indiana law to enforce exclusion though accident occurred in Kansas where exclusion was invalid); *Draper v. Draper*, 115 Idaho 973, 772 P.2d 180, 183 (1989) (applying Oregon law to enforce

exclusion though accident occurred in Idaho where exclusion was invalid); *Allstate Ins. Co. v. Hart,* 327 Md. 526, 611 A.2d 100, 102–04 (1992) (applying Florida law to enforce exclusion though accident occurred in Maryland where exclusion was against public policy, noting, *id* at 102, that "there is a heavy burden on him who urges rejection of foreign law on the ground of public policy"); *Bonner v. Auto. Club Inter–Ins. Exch.,* 899 S.W.2d 925, 929 (Mo.Ct.App. 1995) (applying Missouri law to uphold insurer's failure to defend permissive user against suit by insureds because household exclusion clause precluded coverage though accident occurred in New Mexico where exclusion was invalid); *Sotirakis v. United Serv. Auto. Ass'n,* 106 Nev. 123, 787 P.2d 788, 790–91 (1990) (applying California law to enforce exclusion though accident occurred in Nevada where exclusion was invalid); *Dairyland Ins. Co. v. State Farm Mut. Auto. Ins. Co.,* 41 Wash.App. 26, 701 P.2d 806, 809 (1985) (applying Idaho law under which, at that time, exclusion was valid though accident occurred in Washington where exclusion was invalid); *Urhammer v. Olson,* 39 Wis.2d 447, 159 N.W.2d 688, 690 (1968) (applying Minnesota law to enforce exclusion though accident occurred in Wisconsin, noting that although household exclusion clauses were invalid in Wisconsin, it was not against Wisconsin public policy to recognize and enforce such a provision in a foreign contract). As the great Cardozo once wrote: "The courts are not free to refuse to enforce a foreign right at the pleasure of the judges, to suit the individual notion of expediency or fairness." *Loucks v. Standard Oil Co. of New York,* 224 N.Y. 99, 120 N.E. 198, 202 (1918).

## V. KENTUCKY LAW.

Even if Appellees were residents of Kentucky, there is no public policy that precludes enforcement of a household exclusion clause in a policy of optional insurance that is not governed by any Kentucky statute.

Prior to the decision in *Bishop v. Allstate,* Kentucky courts routinely upheld the validity of household exclusion clauses that had the effect of invalidating liability or UM coverage in automobile insurance policies. *E.g., Allen v. W. Am. Ins. Co.,* Ky., 467 S.W.2d 123 (1971); *Orange v. State Farm Mut. Auto. Ins. Co.,* Ky., 443 S.W.2d 650 (1969); *Third Nat'l Bank of Ashland v. State Farm Mut. Auto. Ins. Co.,* Ky., 334 S.W.2d 261 (1960). *Bishop* held that the legislature, by enacting the MVRA, created a system of compulsory liability and no-fault insurance, and that an exclusionary clause that reduced or eliminated either BRB or liability coverage below the minimum required by statute was void and unenforceable. *Bishop,* 623 S.W.2d at 866. "The cases which uphold the validity of family exclusion provisions are overruled to the extent that they dilute or eliminate the *minimum* coverage requirements of the MVRA." *Id.* at 866–67. Taking its cue from this language, the Court of Appeals held in *Staser v. Fulton,* Ky.App., 684 S.W.2d 306 (1985), that household exclusion clauses were invalid as applied to the statutory minimum limits but valid to the extent that the coverage exceeded the minimum limits. *Id.* at 307.

*Lewis v. West American* broadly held that "family exclusion provisions in liability insurance contracts violate the public policy of this Commonwealth and are unenforceable." *Lewis,* 927 S.W.2d at 836. However, in *Kentucky Farm Bureau v. Thompson,* we upheld a household exclusion clause in a farmowner's insurance policy, explaining that, despite its broad language, *Lewis* only applied to automobile liability insurance policies.

[*Lewis* ] held that *the MVRA precludes* the application of a family or household

exclusion provision to the extent it attempts to eliminate any coverage in an *automobile liability insurance policy,* including amounts in excess of the statutory minimum. Although our language in *Lewis* was admittedly broad and seemingly applicable to all liability insurance contracts, our intent was only to hold unenforceable those family exclusion provisions found in *automobile* insurance policies such as the policy at issue in the controversy then before the Court. To the extent that the language of our holding in *Lewis* was overly broad, *we now limit that case to automobile insurance policies only.*

*Thompson,* 1 S.W.3d at 477 (emphasis partially added). Thus, as did *Bishop, Thompson* emphasized that the public policy that precludes household exclusion clauses is found in the MVRA and explained that *Lewis* only extended *Bishop* to include "amounts in excess of the statutory minimum" in "automobile insurance policies." *Id.*

To reach the desired result in this case, *i.e.,* to provide coverage where there is none, the majority opinion attempts to metamorphose the umbrella policy at issue in this case into an "automobile insurance policy," by positing that the term "security" in the MVRA does not refer to "automobile insurance," *ante* at 36, thereby implying that it could refer to "umbrella insurance," and that "any distinction between the automobile liability and an umbrella liability policy is a distinction without a difference." *Ante* at 36. One might wonder why the MVRA is entitled the *"Motor Vehicle* Reparations Act" (emphasis added) if the term "security" as used therein does not refer to *automobile*

insurance. And, of course, the primary distinction that creates the difference between an automobile insurance policy and a personal liability umbrella policy is that an umbrella policy, by definition, does not provide the minimum liability coverage required by the MVRA—which both *Bishop* and *Thompson* held was the only public policy that invalidates household exclusion clauses. Unless specifically intended to supply a portion of the minimum coverage required by KRS 304.39-110(1), *see* KRS 304.39-110(2), a circumstance that does not exist in this case, an umbrella policy does not provide any coverage required by the MVRA and is not governed by any provision of the MVRA. *State Auto. Mut. Ins. Co. v. Empire Fire & Marine Ins. Co.,* Ky., 808 S.W.2d 805 (1991) (umbrella policy insurer is not a reparation obligor).

Unlike an automobile insurance policy, an umbrella policy does not provide UM, UIM, or BRB coverage. And unlike an umbrella policy, an automobile insurance policy does not provide liability coverage for injuries occurring inside the insured's residence, for false arrest, false imprisonment, wrongful eviction, wrongful detention, malicious prosecution or humiliation, libel, slander, defamation of character or invasion of rights of privacy. No Kentucky statute requires an owner of a motor vehicle to provide umbrella coverage. Just as obviously, a person may own an umbrella policy without owning either a motor vehicle or an automobile insurance policy. The umbrella policy at issue in this case is not a "follow form" policy.[1] It has its own terms and conditions of coverage. In fact, the "Coverages" section of the umbrella policy does not mention the

---

**1.** A "follow form" policy is an excess liability or reinsurance policy that simply extends the limits of the underlying policy by incorporating by reference all of the terms and conditions of the underlying policy except as specif-

ically stated otherwise. *In re HealthSouth Corp.,* 308 F.Supp.2d 1253, 1281 (N.D.Ala. 2004); *United Fire & Cas. Co. v. Arkwright Mut. Ins. Co.,* 53 F.Supp.2d 632, 641 (S.D.N.Y.1999).

words "automobile" or "motor vehicle." Since an umbrella policy is not an automobile insurance policy, the Simpson Circuit Court correctly concluded that *Thompson,* not *Lewis,* is the Kentucky precedent applicable to the household exclusion clause in the Marleys' umbrella policy.

This conclusion is supported by the overwhelming majority of jurisdictions that have considered the issue. *Elec. Ins. Co. v. Rubin,* 32 F.3d 814, 818–19 (3d Cir.1994) (construing Pennsylvania law) (household exclusion clause in umbrella policy did not violate any Pennsylvania public policy and did not violate Pennsylvania's Motor Vehicle Financial Responsibility Law (MVFRL) because umbrella policy required existence of underlying automobile policy that conformed to MVFRL); *State Farm Mut. Auto. Ins. Co. v. Daprato,* 840 A.2d 595, 598–99 (Del. 2003) (distinguishing cases holding that public policy underlying financial responsibility law precludes application of household exclusion clauses in basic automobile policies because financial responsibility law does not apply to optional umbrella policies); *Walker v. State Farm Mut. Auto. Ins.,* 850 So.2d 882, 886–89 (La.Ct.App. 2003) (upholding household exclusion clause in optional umbrella policy and rejecting argument that financial responsibility law applies because, in this case, umbrella policy is only providing coverage in addition to that provided by compulsory automobile liability policy); *Costello v. Nationwide Mut. Ins. Co.,* 143 Md.App. 403, 795 A.2d 151, 159–60 (2002); *Bogas v. Allstate Ins. Co.,* 221 Mich.App. 576, 562 N.W.2d 236, 237 (1997) ("Because the umbrella policy at issue, an optional insurance policy that applied not only to liability arising from the use of an automobile but also other personal activities of the insured, does not conflict with any statutory provisions mandating the coverage that the household exclusion excludes, we hold

that the exclusion in the policy is enforceable."); *Weitz v. Allstate Ins. Co.,* 273 N.J.Super. 548, 642 A.2d 1040, 1041–42 (App.Div.1994) (since umbrella policy, unlike basic automobile policy, is not subject to strict statutory regulation, no public policy prohibits enforcement of household exclusion clause); *cf. Megonnell v. United Serv. Ass'n,* 368 Md. 633, 796 A.2d 758, 772–73 (2002) (where umbrella policy *did not* contain household exclusion clause and was not a "follow form" of the insured's automobile insurance policy, the household exclusion clause in the automobile policy did not apply to the umbrella coverage). The majority opinion chides Appellant for citing in its brief the case of *Safeco Ins. Co. of Ill. v. Auto. Club Ins. Co.,* 108 Wash.App. 468, 31 P.3d 52 (2001), which enforced a household exclusion clause in an umbrella policy. *Ante* at 36. In fact, Appellant's point in citing the Washington case was to identify it as the *only* case so holding and to note that the court had prefaced its decision by mentioning that "the parties have cited no cases from other states that have addressed the question." 31 P.3d at 54. Appellant's brief at 28 n.8.

The majority of this Court is wont to cite the "reasonable expectations" of insureds in determining the validity of coverage exclusions. *E.g., Nationwide Mut. Ins. Co. v. Hatfield,* Ky., 122 S.W.3d 36, 43 (2003); *Allstate Ins. Co. v. Dicke,* 862 S.W.2d at 329. Of course, the majority has not done so in this case because Appellees could not have reasonably expected coverage since their policy contains a household exclusion clause that is valid under the law of Indiana where they reside, where they purchased the insurance, and where the insured vehicle is licensed and garaged. *Sotirakis v. United Serv.,* 787 P.2d at 791 ("[A]ssuming the insureds were aware of the family exclusion clause,

it is unlikely that they expected the clause to be void when travelling in Nevada.").

For these reasons, I would reverse the Court of Appeals and reinstate the judgment of the Simpson Circuit Court. Accordingly, I dissent.

JOHNSTONE, and KELLER, JJ., join this dissenting opinion.